**People of the State of Illinois, Plaintiff-Appellee, v. James Johnson, Defendant-Appellant.**

**Gen. No. 52,372.**

First District, Third Division.

April 3, 1969.

Rehearing denied May 1, 1969.

152

Gerald W. Getty, Public Defender of Cook County, of Chicago (George L. Lincoln and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James R. Kavanaugh, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

The defendant, James Johnson, was found guilty of murder after a trial by jury and was sentenced to a term of sixteen to twenty-three years in the penitentiary. From this judgment of conviction the defendant prosecutes the instant appeal.

The defendant contends that: 1) he was not proven guilty beyond a reasonable doubt; 2) the trial court erred in excluding evidence in support of his theory of self-defense; and 3) it was error for the trial court to permit the State to impeach a defense witness on a collateral matter.

It is undisputed that on November 9, 1966, the deceased, Ed Merchant, died from a stab wound of the lung inflicted by the defendant, James Johnson. It was the defendant's position at trial that the killing was in

self-defense. There were no witnesses to the killing other than the defendant.

The State called Floyd Burrell who lived and worked at a hotel at 661 West Madison Street in Chicago. The witness testified that on the evening of November 9, 1966, he was about to ascend the stairs to his hotel when he met the deceased who was carrying a half-pint of cheap whiskey. At the foot of the steps the two men shared a drink and as they were standing together, the defendant approached them and said, "Give me a drink of that whiskey." The deceased responded "Well, you know it ain't no good blood between you and I. You remember when we live over at the other hotel. It wasn't no good blood between us there and there ain't no good blood between us now." Burrell, anticipating a fight, left the two men as Merchant informed the defendant, "Well, with what I carry I will kill any mother ————." It was Burrell's opinion that the defendant was not intoxicated but that the deceased was about "three-fourths intoxicated." The witness further testified that after approximately one hour, the defendant came to his room, gave him a knife, and informed the witness that "[he] just cut a boy." On cross-examination, the witness stated that he did not hear the defendant say anything to provoke the deceased.

Police Officer Michael Boyle testified that he arrested the defendant at his residence at about 10:00 p. m. on the evening following the killing at which time the defendant informed the police that he was glad to see them because he had been looking for them in order to surrender. According to Boyle, the defendant said: "I stabbed that guy because he was trying to rob me." Officer Boyle was later recalled by the State whereupon he stated that he had noticed no bruises, abrasions, or scratches on the defendant's face at the time of the arrest. He also stated that the defendant never mentioned that the deceased

154

possessed a knife or any other weapon during the alleged robbery attempt.

The defendant took the witness stand in his own behalf and related the events leading up to the death of Ed Merchant. He corroborated the testimony of Burrell as to what was said while Burrell was present. When Burrell departed, the defendant said that Ed Merchant rushed toward him, struck him on the left cheek with the whiskey bottle in his hand, and then demanded money from the defendant. When the defendant told Merchant that he had no money, Merchant again rushed toward him while beginning to pull out an object from his pocket. The defendant stated that the black handle was exposed and it looked like a knife. The defendant then stabbed the deceased at least three times that he remembered, twice in the arm and once in the chest. After the stabbing, the defendant saw the deceased's knife lying on the sidewalk. There was additional testimony by the defendant that his being struck in the face with the bottle resulted in a bruise on his cheek and soreness in his left jaw for a period of two weeks.

Several witnesses testified to the violent disposition of the deceased and to the peaceful nature of the defendant in the community. It was established that the defendant was blind in one eye, 6′ 1″ tall, and thirty-nine years of age. The deceased was 6′ 5″ tall and weighed about 195 pounds.

▆▆▆▆ The defendant asserts that the State has failed to meet its burden of proof since it has not directly rebutted the defendant's own exculpatory testimony. In the case at bar, there were no occurrence witnesses other than the defendant, and hence it is highly unlikely that the prosecution could ever directly rebut the defendant's testimony in such a case. It is true that when "some evidence" of self-defense is offered by the defendant, the burden devolves upon the State to

prove beyond a reasonable doubt as to that issue together with all the other elements of the offense. (Ill Rev Stats 1965, c 38, §§ 3–2 and 7–14.) However, where a defendant's exculpatory statements asserting self-defense are effectively impeached by his prior inconsistent conduct and statements and by the uncontradicted facts and circumstantial evidence so as to render the defendant's version improbable, the jury need not accept the defendant's statements or testimony as true even though the State cannot directly rebut the exculpatory language. (People v. Warren, 33 Ill2d 168, 210 NE2d 507.) In the instant case, the jury was presented with evidence which, if accepted by it, could cause it to refuse to accept the defendant's testimony. It was undisputed that the defendant fled from the scene and failed to render any aid to the deceased. There was testimony by the police that the defendant made no mention of the deceased's having a knife at the time of the attack. It is also significant that the police found no knife at the scene. The deceased had been stabbed not once but four times. The arresting police officer discovered no bruises, abrasions, or scratches on the face of the defendant. In addition, the defendant's own testimony reveals that he stabbed the deceased before the deceased had drawn a knife. This evidence, taken together, prompts us to conclude that we cannot disturb the jury's finding that the evidence did not support the defendant's theory of self-defense. It is not our function to substitute our judgment for that of the jury since whether a killing was justified under the law of self-defense is a question of fact for the jury (People v. Johnson, 2 Ill2d 165, 117 NE2d 91; People v. Owens, 73 Ill App2d 108, 219 NE2d 733) and when, as here, the evidence is conflicting, it is the function of the trier of fact to resolve the conflict and determine the credibility of the witnesses. People v. Sudduth, 14 Ill2d 605, 153 NE2d 557.

However, even though we are not prepared to disturb the jury's verdict based upon the evidence which was in fact placed before it, there remains the question whether the defendant was afforded a fair trial in which there was no improper and prejudicial exclusion of evidence offered on his behalf. The defendant asserts that evidence favorable to him was erroneously excluded by the trial court, and therefore the jury could not make an adequate and informed finding as to his guilt or innocence. He specifically argues that the trial court erred in excluding evidence offered by the defendant relative to the deceased's general reputation in the community, to the defendant's own awareness of the deceased's violent disposition, and to the defendant's state of mind at the time of the killing.

██ ██ In a trial for murder or manslaughter in which preliminary testimony is offered which, if given credence by the trier of fact, shows as in this case that the deceased was the aggressor, evidence of the deceased's violent disposition or evidence of prior threats or misconduct by the deceased towards the defendant is admissible as tending to show the extent of his apparent danger, the circumstances confronting the defendant, and the motive by which he was influenced. (People v. Davis, 29 Ill2d 127, 193 NE2d 841; People v. Adams, 25 Ill2d 568, 185 NE2d 676; People v. Dugas, 310 Ill 291, 141 NE 769.) In the instant case, several defense witnesses were properly allowed to testify that the deceased was "vicious," "a fighter," was not a peaceful man in the community, and that he had been known to carry a knife. The defendant was not unduly restricted in thus bringing the defendant's reputation to the attention of the jury.

██ ██ On redirect examination, the defendant was allowed to testify that he had seen the deceased at an earlier date at the System Hotel with a knife in his

157

possession. However, a general objection was sustained to the question by defense counsel: "And at the System Hotel what was he doing with that knife when you saw it?" and the defendant was thereby precluded from explaining the circumstances of that occurrence. The defendant had a right to show that he was acquainted with the dangerous disposition of the accused and defendant's knowledge of such facts is a highly material element to the issue of self-defense (People v. Allen, 378 Ill 164, 37 NE2d 854) since the jury must decide whether the defendant could reasonably believe that such force was necessary to prevent imminent death or great bodily harm to himself or to prevent the commission of a forcible felony. If at the System Hotel the defendant had been threatened by the deceased or had been involved in a violent altercation with the deceased, the jury should have been given the opportunity to have such facts and surrounding circumstances before it. We are of the opinion that the trial court unduly and improperly circumscribed the defendant's proof in this instance.

 The prosecution's general objections were sustained when defense counsel asked the following questions of his client:

"The DEFENDANT (continuing): When I pulled out my knife Ed Merchant was coming toward me.

"Q. What did you think he was coming toward you for? (State's objection sustained.)

"Q. Did you feel, sir, that you were about to be attacked? (State's objection sustained.)

"Q. Would you tell the ladies and gentlemen of the jury your mental state at that time? (State's objection sustained.)"

The form of the second question could have been objected to as a leading question; however the rule is well-settled

that a general objection will be regarded as going to the competency of the question rather than to the form of the question. (People v. Allen, supra.) In any event, this court sees no ground for objections being sustained as to the remaining two questions, and in fact the responses to these questions relate to a crucial issue in this case, namely, what was the motive or belief of the accused at the time the deceased rushed toward him. In People v. Biella, 374 Ill 87, 28 NE2d 111, the defendant was charged and convicted of manslaughter, and self-defense had been asserted by the accused. The Supreme Court held that it was reversible error for the trial court to sustain general objections thereby preventing the defendant from testifying as to how he thought the defendant was going to kill him or as to "How could Mr. Tyrka (the deceased) have killed you at that time?" At page 89, the court said:

> "The court should have permitted the defendant to answer these questions. In criminal cases where the intention, the motive or belief of the accused is material to the issue, he is allowed to testify directly to that fact. (Citing cases.) The circumstances under which the act in question was done usually serve to manifest to a great degree the intent of the actor and may overcome his declaration as to his intention, but he has the right to testify to his intention and to have the circumstances surrounding the act considered in connection with his testimony."

Likewise, in the case at bar, the defendant was erroneously denied this opportunity to directly testify to his intention, motive and belief. In Biella, the court went on to say at page 90:

> "We have set out enough of the evidence to show that there is a reasonable basis for a claim of self-defense. It was essential that the record be free from prejudicial error."

We are mindful of the fact that the jury's guilty verdict was predicated exclusively upon circumstantial evidence, and we are also mindful of the uncontradicted testimony by the defendant and the State's own witness that the deceased was the oral aggressor immediately prior to the occurrence. Therefore, it was essential that the record be free from prejudicial error. The aforementioned errors in unduly restricting the defendant's testimony cannot be characterized as merely harmless errors, and the judgment must be reversed and the cause remanded for a new trial not inconsistent with the views herein expressed.

It is unlikely that the alleged improper impeachment of the defense witness will arise at a future trial, and therefore it need not be discussed.

Reversed and remanded.

SCHWARTZ and DEMPSEY, JJ., concur.