THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CALVIN MCKINNIE, Defendant-Appellant.

(No. 72-194;

Second District—April 30, 1974.

T. MORAN, P. J., specially concurring.

Ralph Ruebner, Deputy Defender, of Elgin (Richard Wilson, Assistant Appellate Defender, of counsel), for appellant.

Philip G. Reinhard, State's Attorney, of Rockford (James W. Jerz and Edward Morris, both of Model District State's Attorneys Office, of counsel), for the People.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

The defendant was convicted of voluntary manslaughter and sentenced to a term in the penitentiary of not less than 8 nor more than 20 years. From this conviction and sentence he appeals on several grounds, which we will consider separately.

The defendant first challenges his conviction on the ground that his defense counsel was incompetent in that he failed to move, prior to or at the trial, for the suppression of a certain statement which the defendant made to the police and which the State used later to impair his credibility.

The circumstances giving rise to this contention are as follows: The defendant was wounded in an incident in which the other person was killed. He was taken to the hospital immediately after the incident for treatment of his wound and during such treatment the doctor administered 75 milligrams of Demerol, a narcotic, and 25 milligrams of Phemergen, a tranquilizer. The doctor testified they were administered simply as a pain killer; further, that the effect of these drugs might last as long as 3 to 4 hours and might have the effect (although it would not necessarily do so) of making the patient sleepy or less alert. Within an hour or two after being treated at the hospital the defendant was taken to the police station where, after the proper *Miranda* warnings, he gave a statement in writing to the effect that he did not shoot the deceased and, in fact, did not have a gun that night at all. The next day about noon (according to the police testimony) the defendant stated he wanted to clear up some points in connection with his statement of the night before. At that time the defendant made and signed a second statement (again after being warned as to his rights) in which he stated he had, indeed, shot the deceased, but that he had done so in self-defense.

At the trial, the defendant took the stand in his own behalf and after his testimony the State introduced the two inconsistent statements for the purpose of impeaching the defendant's testimony.

The defendant now contends his attorney should have moved to suppress the first statement as having been made under the influence of drugs and that his failure to do so amounted to such incompetency as to have deprived defendant of proper representation, thus justifying reversal of his conviction and a new trial.

On this point we note that just prior to trial defendant told the court, in the presence of his attorney and the State's Attorney, that he had given both statements freely and voluntarily and after being advised of his rights. Also implicit in defendant's contention that his trial counsel was incompetent in not moving to suppress the first statement is the assumption that, if timely made, the motion to suppress would have been

granted. From a review of the record we are of the opinion that the statement was not subject to being suppressed as an involuntary or coerced statement.

■■ A statement or confession, whatever the intended use, is not automatically subject to suppression on the sole ground that a drug has been administered to the defendant making the statement. In order for the confession to be suppressed as being involuntary it must appear by the evidence that the defendant's "will was overborne". *Reck v. Pate* (1961), 367 U.S. 433, 6 L.Ed.2d 948, 81 S.Ct. 1541.

■■ On the basis of testimony of the administering doctor, which is all of the medical testimony available from the record, there is certainly no showing that the drugs administered to the defendant so affected his mental processes as to make his first statement to the police involuntary. Also, based on the testimony of the defendant, the two officers who took the statements, and the doctor, the record reflects that the defendant was reacting and responding in a normal manner just prior to and at the time he made the first statement. Inasmuch as the statement objected to was given after defendant was advised of his rights under *Miranda,* and was in no way shown to be involuntary, the statement was properly used to impeach his later testimony.

In view of the above, the question of trial counsel's incompetency is not well taken and we will not pursue it further, except to note (in fairness to defense counsel) that the trial judge in summing up at the end of the trial said, "This case was very well tried, in my opinion, by both sides of the case."

For the second main point of his brief, the defendant contends that "because defendant acted in self-defense he was not properly proved guilty of voluntary manslaughter beyond a reasonable doubt." Whether or not the defendant acted in self-defense is a matter for the jury. In *People v. Smith* (1972), 7 Ill.App.3d 912, 915, the court said:

"The court in *People v. Johnson,* 108 Ill.App.2d 150, 247 N.E.2d 10, at page 156 said:

'It is not our function to substitute our judgment for that of the jury since whether a killing was justified under the law of self-defense is a question of fact for the jury [citations] and when, as here the evidence is conflicting, it is the function of the trier of fact to resolve the conflict and determine the credibility of the witnesses. [Citation.]' "

The jury did not find the defendant had acted in self-defense but found him guilty of voluntary manslaughter as charged in the indictment. There is substantial evidence in the record to support the verdict, therefore, we do not agree with defendant's claim in this regard. We find the

evidence was sufficient to find the defendant guilty beyond a reasonable doubt.

The defendant's next contention is that the trial court erred in allowing non-expert testimony as to the caliber of the gun which fired the shots heard by the testifying witnesses. Under the facts of this case we do not feel the court erred in allowing this testimony to be admitted. The several cases cited by the defendant to support his contention are not apposite. Two of them, *People v. Berkman* (1923), 307 Ill. 492, 139 N.E. 91, and *People v. Fiorita* (1930), 339 Ill. 78, 170 N.E. 690, were early ballistics cases where the court felt a proper foundation had not been laid for the expert's opinion. *People v. Parr* (1971), 133 Ill.App.2d 82, 272 N.E.2d 712, was an automobile case and was decided on its own particular facts. It has no bearing on the case before us.

The determination of whether a witness is qualified to testify as an expert lies within the discretion of the trial judge. *People v. Speck* (1968), 41 Ill.2d 177, 242 N.E.2d 208; *Phillips v. Shell Oil Co.* (1973), 13 Ill.App. 3d 512, 300 N.E.2d 771; *Hagerman v. National Food Stores, Inc.* (1972), 5 Ill.App.3d 439, 283 N.E.2d 321.

In the case before us, each of the two witnesses whose testimony is objected to on this appeal had considerable practical experience in the military service with various kinds of firearms, including revolvers. Terry Lee Berg had been in the Navy for 4 years and during 3 of those years about once a month had fired a .38 revolver. He also owned and fired his own .38 revolver. He testified he had owned a .22-caliber gun since he was 13 years old and had bought, sold and traded in guns, including .22's and .38's and "had been around guns all his life."

Jack Housewart testified that he had been a Second Class Petty Officer in the Navy during 1955 and 1956 and that he had been classified as an expert on .22 pistols, having fired a .22 in ROTC about once a week for 3 years and that he was a hunter and had owned and used .22-caliber weapons frequently.

No hypothetical questions were asked of these witnesses. Mr. Berg was asked whether he had an opinion as to whether the shots he heard were from a .38-caliber weapon, to which he replied that he did, because a .22-caliber pistol had a sound similar to a cap pistol, "a real light short sound", and that a .38-caliber sounded different, and the sound of all five shots he heard were similar to a cap pistol. Mr. Housewart was asked if the shots he heard were, in his opinion, from a .22-caliber weapon and upon this being objected to, was asked, "In your opinion, sir, were the shots that you heard of a small caliber or a large caliber?", to which he replied, "small caliber".

■■ In view of the practical experience of these two witnesses, it does

not appear to have been an abuse of the trial court's discretion to have allowed the answers to the questions indicated. The experience of both men was considerably above that of the average person in the field of firearms and the opinions given in response to the indicated questions seem to be well within their competence based on their related experiences. We, therefore, cannot agree with the defendant's contention in this regard.

A further point is made by the defendant with regard to the list of witnesses, containing 67 names, furnished to him by the State, which it is contended was "cumbersome and meaningless". There is no doubt that failure to provide the names and addresses of State's witnesses (*People v. Glover* (1971), 49 Ill.2d 78, 273 N.E.2d 367) or the omission of a number of witnesses not listed at all (*People v. Barfield* (1965), 65 Ill. App.2d 54, 213 N.E.2d 24) are grounds for reversal but we have not found any case where the listing of all the State's potential witnesses, even though they were not all called, was held to be ground for reversal. The cases cited by defendant do not so hold, but only indicate the defendant has a right to be informed of the names and addresses of the State's witnesses and that it is error to allow "surprise" witnesses to testify whose names had been withheld by the State prior to trial. We cannot accept the defendant's argument that because the list of witnesses contained 67 names that this is tantamount to not furnishing a list at all.

■■ Finally, the defendant contends his sentence is excessive in that he was sentenced to not less than 8 years nor more than 20 years in the penitentiary. Under the Unified Code of Corrections (Ill. Rev. Stat., 1972 Supp., ch. 38, sec. 1005—8—1) since the maximum term for voluntary manslaughter is 20 years and the minimum should not be more than one-third of the maximum, he contends the sentence should be 1 to 3 years. The defendant is misreading or misconstruing the statute. It does not provide that the maximum shall not be more than three times the minimum, but that the minimum shall not exceed one-third of the maximum. Since the case had not been finally adjudicated as of January 1, 1973, the minimum sentence should be set at 6 years 8 months. *People v. Harvey* (1973), 53 Ill.2d 585; *People v. Chupich* (1973), 53 Ill.2d 572; *People v. Smith* (1973), 10 Ill.App.3d 501.

For the reasons given above, the conviction is affirmed, the sentence is vacated, and the cause remanded for sentencing pursuant to the provisions of the Unified Code of Corrections.

Judgment affirmed, sentence vacated, cause remanded.

GUILD, J., concurs.

Mr. PRESIDING JUSTICE T. MORAN, specially concurring:

While I concur in the court's determination on the first issue, I do not agree with all the rationale supporting that conclusion.

Just prior to opening statements to the jury, this colloquy took place between the court, defendant and his counsel, in the presence of the assistant state's attorney:

> "Mr. Schirger [defendant's counsel]: Your Honor, I have also filed a motion in this case for the production of two confessions and oral statements.
>
> Mr. McKinnie, the statements which you gave to the police were given as a voluntary act on your part; you were not forced or compelled to give these statements, were you?
>
> Mr. McKinnie: No, I wasn't.
>
> Mr. Schirger: And you were advised prior to giving these statements of your rights to an attorney?
>
> Mr. McKinnie: Yes.
>
> Mr. Schirger: And you gave these statements to the police?
>
> Mr. McKinnie: Yes, I did.
>
> Mr. Schirger: As a voluntary act on your part?
>
> Mr. McKinnie: Yes, I did.
>
> The Court: I note there has been no motion made or hearing held on the question of suppressing these statements. I take it then that is the reason why you have not done so?
>
> Mr. Schirger: That's right, your Honor. I have determined not to suppress the confessions and oral statements because that would frivolous, and under those circumstances I am ready to proceed to trial."

The substance of this narrative was sufficient to dispose of the issue.

This court's further rationale in effect states that even if trial counsel had moved to suppress the statements or had he objected to their admission, it would have been for naught. This conclusion is based, not upon evidence adduced from a motion to suppress (there was none), but from *some* evidence produced at trial by *one* side, the State. The voluntariness of the statements was not then in issue. Thus, by extending the rationale, this court is acting in the capacity of a trial court, determining from an inadequate record that the statements were voluntary when the issue properly before us is whether trial counsel was incompetent in not moving to suppress the statements. This, in my opinion, establishes bad precedent.