In re TERRY MORGAN, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* TERRY MORGAN, Respondent-Appellant.)

First District (4th Division) No. 60125

Opinion filed December 10, 1975.

James J. Doherty, Public Defender, of Chicago (Anthony Pinelli and Suzanne M. Xinos, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Terry Morgan was charged with burglary (Ill. Rev. Stat., ch. 38, § 19—1). After the court found him to be a delinquent, he was recommitted to the custody of the youth authorities. On appeal, he contends that his statement to the police and the evidence discovered as a result of it should have been suppressed, and that his recommitment to the department of corrections without a hearing was improper.

At the hearing held on September 26, 1973, the following facts were established. On September 12, 1973, Officer Restis and his partner were in plain clothes in an unmarked squad car near 4600 North Broadway,

when two young men emerged from an alley. The youths were carrying suitcases and boxes of merchandise down Broadway when the officer stopped them. He approached the youths, determined that they were curfew violators, placed them in custody, and read them their rights from the standard card. The facts, however, are in dispute as to specifically what was said after the juveniles were Mirandized. According to the officer, the youths said they understood the rights explained to them, and that they wanted to tell Officer Restis about the merchandise that was in their possession. The defendant told the officer that a boy named Smith informed him that the merchandise had been stolen that morning and that it was hidden in the bushes at the rear of the store. Officer Restis was directed to the rear of the store and he noticed that the bars on the window had been pulled out of position and that the rear door was damaged. The officer took the youths and the stolen merchandise to the police station.

Joseph Muncey testified that he closed his store at 1 a.m. on September 12, 1973, and at 5 a.m. he was called by the police and asked to return. Upon arrival, he discovered that the door was broken, that the bars had been pried from a rear window, and that certain merchandise was missing from the premises. Shortly thereafter, he identified his property at the police station.

After the prosecution rested, defense counsel moved to suppress the defendant's statement and a hearing was held on the motion. The defendant testified that he was 15 years old and in the ninth grade at Attucks School. He denied being apprised of his rights, and stated that he did not understand what it meant to consult with an attorney, or to have an attorney appointed. On the other hand, he admitted knowing what a trial was, what a lawyer was, and what it meant to have evidence brought into court against an accused. The witness testified that other officers had told him he had the right to remain silent and anything he said could be used against him in court. However, the defendant stated that the only thing the officer said was "get in the car before I bust your head."

Winslow Jeffries, a family youth counselor with the Illinois Department of Corrections, was called to support defense counsel's motion. He testified that he had known Morgan since 1971, and that defendant had a low reading and comprehension score. With these problems in mind, Mr. Jeffries had the defendant transferred to a primary vocational school.

When the hearing ended, the motion to suppress the statement was renewed but denied. There was a finding of delinquency and the defendant, who was on parole, was recommitted to the department of corrections.

Defendant argues that the trial court's denial of the motion to suppress his statement was improper because he was not Mirandized. The State did not prove that the defendant was advised of his rights or that he knowingly waived these rights. Defendant submits that the State's case consisted of the testimony of Officer Restis that he read the accused his rights, while the defendant denied that this was done.

■■ In Illinois the trial court makes the preliminary inquiry as to whether the defendant was properly warned and whether he knowingly waived his rights. When making this determination, the court need not be convinced beyond a reasonable doubt, and its findings will not be disturbed unless it can be said that they are against the manifest weight of the evidence. (*People v. Torres* (1973), 54 Ill.2d 384, 297 N.E.2d 142; *People v. Burbank* (1972), 53 Ill.2d 261, 266, 291 N.E.2d 161.) The defendant argues that the testimony of the State's occurrence witness is the only evidence the State had, and that it conflicted with the defendant's testimony. Although this may be so, courts deciding cases without juries have always made determinations about the credibility of witnesses and the weight to be given their testimony, (*People v. Mann* (1963), 27 Ill.2d 135, 139, 188 N.E.2d 665, *cert. denied*, 374 U.S. 855, 10 L.Ed.2d 1075, 83 S.Ct. 1923; *People v. Pigrenet* (1962), 26 Ill. 2d 224, 227, 186 N.E.2d 306), and this rule applies to the testimony of the accused (*People v. Hendrix* (1974), 18 Ill.App.3d 838, 841, 310 N.E. 2d 798), as well as to the testimony of the complaining witness. (*People v. Brinkley* (1965), 33 Ill.2d 403, 405-06, 211 N.E.2d 730.) It is within the jury's province to accept the testimony that they believe and reject the testimony that they disbelieve. (*People v. Krueger* (1968), 99 Ill. App.2d 431, 442, 241 N.E.2d 707.) The trial judge chose to believe the officer's testimony that the defendant was Mirandized, and this court will not interfere with the trial court's findings merely because there were conflicts in testimony. (*People v. Mundorf* (1968), 97 Ill.App.2d 130, 239 N.E.2d 690.) Therefore, we hold that the findings were not against the manifest weight of the evidence. (See *People v. Scott* (1975), 26 Ill.App.3d 857, 326 N.E.2d 58.) The defendant also complains because the officer failed to reduce the statement in question to writing or to obtain a written statement that he waived his *Miranda* rights. However, he cites no case or statutory authority mandating that these statements be reduced to writing. Therefore, we find this complaint to be of no consequence.

■■ Next, the defendant wants us to assume that he was properly admonished, which we have, and to determine if he made a knowing waiver of his rights. He argues that the *Miranda* warnings are not a ritual of words, but require meaningful advice to the unlettered and

unlearned in language which he can comprehend and on which he can knowingly act. (*Coyote v. United States* (10th Cir. 1967), 380 F.2d 305, 308.) *Coyote* states that courts should use the following test: "* * * whether the words in the context used, considering the age, background and intelligence of the individual being interrogated, impart a clear, understandable warning of all of his rights." (380 F.2d 305, 308.) The first two considerations in the *Coyote* test are age and background. Although the defendant was only 15 years of age, we think that it is significant that he had previous experience with the police because of his prior arrest. Nevertheless, the age of the defendant does not ipso facto make a statement inadmissible if it is voluntary (*People v. Hester* (1968), 39 Ill.2d 489, 237 N.E.2d 466), and we think it was. The crucial consideration, however, is the intelligence of the accused and his ability to make an intelligent decision. The defendant argues that he did not understand the admonishments and, therefore, could not knowingly waive his rights. In support of this proposition, the defendant cites *People v. Turner* (1973), 56 Ill.2d 201, 306 N.E.2d 27, and *People v. Baker* (1973), 9 Ill.App.3d 654, 292 N.E.2d 760. Both of these cases can be distinguished on their facts. In *Turner*, the defendant had spent 10 years in a school for mentally retarded children, had an overall IQ of 75, and had attained an educational level somewhere between the third and fourth grade. The *Baker* defendant's mental age was found to be four years less than his actual age; he was doing poorly in school, and was almost nonfunctional as a student. Although the intelligence data on the defendant in the instant case is less complete than that in the cases the defendant relies on, we think that the defendant was a functional student since he was in the ninth grade in a vocational school. Moreover, in his testimony he stated that he understood some of the admonishments. Therefore, we hold that the defendant knowingly and intelligently waived his rights.

Since we held that the defendant was Mirandized and that he knowingly, intelligently, and voluntarily waived his right to remain silent by making the statement, it is unnecessary to consider defendant's contention that the evidence in the inculpatory statement was the fruit of an illegal interrogation.

■■ The defendant's final contention is that the trial court failed to comply with the statutory provisions of section 5—1 (Ill. Rev. Stat. 1973, ch. 37, § 5—1) of the Juvenile Court Act. The Act sets out the requirements that must be complied with when a minor is adjudicated a delinquent. The Act provides in pertinent part:

> "(1) After adjudging the minor a ward of the court, the court shall hear evidence on the question of the proper disposition best serving the interests of the minor and the public. All evidence

helpful in determining this question, including oral and written reports, may be admitted and may be relied upon to the extent of its probative value, even though not competent for the purposes of the adjudicatory hearing. No order of commitment to the Department of Corrections shall be entered against a minor before a written report of social investigation, which has been completed within the previous 60 days, is presented to and considered by the court."

In the instant case, the defendant, who was on parole, had previously been adjudged a ward, and had received a dispositional hearing as mandated by the Act. Therefore, it is in the court's discretion as to whether or not a second dispositional hearing will be held when the ward returns to court for alleged parole violations and the allegations are proved at a hearing.

Appellant cites *Gagnon v. Scarpelli* (1973), 411 U.S. 778, 36 L.Ed.2d 656, 93 S.Ct. 1756, as authority for reversal. Gerald Scarpelli was a Wisconsin probationer under the supervision of the probation department of Cook County, Illinois. He committed a burglary in Illinois and Wisconsin revoked his probation without a hearing. On a writ of habeas corpus, the United States District Court held that revocation without a hearing and appointment of counsel was a denial of due process. The United States Supreme Court affirmed the holding that failure to conduct a hearing violated due process, but reversed the holding that appointment of counsel was required. Mr. Justice Powell, writing for the majority, said:

"This case presents the related questions whether a previously sentenced probationer is entitled to a hearing when his probation is revoked and, if so, whether he is entitled to be represented by appointed counsel at such a hearing.

\* \* \*

Because respondent was not afforded either a preliminary hearing or a final hearing, the revocation of his probation did not meet the standards of due process prescribed in *Morrissey*, which we have here held applicable to probation revocations." 411 U.S. 778, 779, 791, 36 L.Ed.2d 656, 660, 667, 93 S.Ct. 1756, 1758, 1764.

In the case before us, the trial court conducted a hearing and the appellant was represented by counsel. We hold that the hearing substantially satisfied the requirements of *Gagnon* and the Illinois statute.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

DIERINGER, P. J., and BURMAN, J., concur.