THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
O. D. WADE, Defendant-Appellant.

Fifth District   No. 75-480

Opinion filed July 25, 1977.

Michael J. Rosborough and Daniel M. Kirwan, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Clyde L. Kuehn, State's Attorney, of Belleville (Bruce D. Irish and John A. Clark, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Defendant, O. D. Wade, was convicted by a jury in the circuit court of St. Clair County of the crime of murder and sentenced to the penitentiary for a term of not less than 35 nor more than 70 years. His petition for a new trial pursuant to section 72 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 72) was subsequently denied. On appeal defendant raises the following issues: (1) whether he was proved guilty beyond a reasonable doubt; (2) whether a witness was properly qualified to advance an opinion that more than one gun caused the holes found in the deceased's vehicle; (3) whether defendant's right to a fair trial was prejudiced by the court's admission of testimony relative to other crimes and a gun which defendant was carrying when arrested; (4) whether the court erred in not conducting a hearing to ascertain if juror bias was created as a result of defendant's perusal of the juror list; and (5) whether the court properly denied defendant's section 72 petition for a new trial on the basis that newly discovered evidence is not grounds for such a petition in a criminal case.

In the early evening hours of January 26, 1975, Glennon Rodgers, the deceased, was driving in East St. Louis a 1970 Chevrolet owned by the

father of State's witness Cedric Taylor. Cedric Taylor and John Billops were passengers in the auto. Taylor was seated on the passenger side of the front seat and Billops was in the rear seat, behind Glennon Rodgers.

At approximately 6:30 p.m., when it was getting dark, this group was traveling south on 19th Street and came to the intersection of 19th and Central. This intersection is regulated by a four-way stop sign. There is a poolroom and a bar at the intersection. In the opinion of Cedric Taylor, this area was well lighted since light from these establishments combined with the illumination provided by street lights in the vicinity.

Both Taylor and Billops observed a white car parked on the east side of 19th Street. Billops described it as a 1965 Oldsmobile which he knew to be used by defendant, Elijah Parker, and Richard Hart. Cedric Taylor testified that when they stopped at the intersection Glennon Rodgers said, "It looks like O.D. Wade." John Billops also recalled his mentioning defendant's name, but he did not see anyone before or after the shooting occurred. Cedric Taylor testified that he saw defendant, Elijah Parker, and Richard Hart standing by the car parked near the poolroom. He further testified that after their car passed this group, O. D. Wade, armed with some kind of handgun, ran into the street, crouched down and fired on the car. Taylor stated that he heard six shots and that defendant was approximately 15 feet from the car and directly under a streetlight when he opened fire. The car went out of control after Glennon Rodgers was hit and both Billops and Taylor had to assist in stopping the auto. Glennon Rodgers subsequently died as a result of gunshot wounds to the back which damaged various internal organs.

In concluding its case in chief, the State offered the testimony of the police officer who arrested the defendant. Although the State had acknowledged in its opening statement that it was not contending that the .357 magnum handgun found on defendant's person when he was arrested was the murder weapon, the prosecutor elicited considerable testimony from the officer concerning the gun. The officer testified that when defendant was arrested the gun was fully loaded and concealed in defendant's clothing and that defendant had 12 other rounds of ammunition for the gun in his pocket. The prosecutor also elicited the officer's opinion that a .357 magnum will pierce a car's bumper. Photographic exhibits of the car as well as the testimony of Cedric Taylor revealed that there was a large hole in the car's rear bumper and a smaller hole in the trunk. Immediately following the examination of this officer, the court and counsel engaged in a discussion at side bar the result of which was an oral announcement by the court of a stipulation of counsel that ballistics would show that the weapon the officer was referring to was not the weapon used in the shooting.

Yvonne Jackson testified for the defense. Miss Jackson lived at 1310

South 19th Street in East St. Louis on the day in question; the house at that location is next to the poolroom at 19th and Central. She testified that around 6:30 p.m., while standing on the porch, she saw a white car in front of her house. She further stated that a brown car drove by and Elijah Parker, the sole occupant of the white auto, got out of the car and fired three shots at the passing auto with a rifle while standing at the side of the road. The brown car subsequently swerved into the ditch on the east side of 19th Street, and Elijah Parker drove away. Miss Jackson testified she had known Elijah Parker for about three years. On cross-examination, she testified that she had first met him on the street in Rush City and that she had never been out with him or "with him" and characterized her association with him as "nothing." When recalled to the stand later in the proceeding, Miss Jackson testified, in response to questioning by the prosecutor, that she was pregnant by Elijah Parker and that she knew another girl was also pregnant by him. She denied that her feeling toward him was one of hatred but admitted that she had testified earlier, out of the presence of the jury, that she hated him. Miss Jackson also related in the aforementioned testimony outside the presence of the jury that she had given a written statement of her observations to two East St. Louis police officers. This report was not included in the State's file which was copied for purposes of discovery.

· The defendant testified in his own behalf and offered an alibi defense. Defendant Wade testified that he was at the East St. Louis residence of Edna Bolden at the time of the shooting. Mrs. Bolden's residence is at 1517 South E Street. He further testified that Elijah Parker came into the Bolden residence and told him, in the presence of Mrs. Bolden, that he had seen Taylor, Billops, and Jenks (Glennon Rodgers) going down 19th Street and had shot at them and believed he had hit one of them. According to defendant, no one responded to this story and Parker left after 15 or 25 minutes. On cross-examination, defendant testified that on January 26 he had the gun found on him when arrested in a fully loaded condition. This answer was made after his counsel made an unsuccessful objection that such question was irrelevant since the State had conceded that it was not the murder weapon.

The testimony of Edna Bolden was offered in corroboration of defendant's alibi. She testified that defendant, Hart and Parker were all at her house on January 26. She stated that around 7:30 in the evening Parker took Hart's white car and went up on 19th Street, returning at 6:00 p.m. to relate a story that Cedric Taylor got out of a car occupied by John Billops and the deceased and fired upon him. She further testified that he said he returned the fire and got one of them. According to her testimony, the intersection of 19th and Central is one block from her house. She stated that she left her home shortly after Parker arrived and spent the night at

her daughter's house. She also testified that her daughter, Rosalee Branch, is the other woman pregnant by Parker. On cross-examination, the prosecution attempted to impeach her testimony by comparing her answers concerning the times when people came and went and the date of this incident with the inconsistent answers she gave at a previous hearing before the trial judge alone.

After being fully advised of his rights, Elijah Parker chose to testify for defendant in surrebuttal over the recommendation of his counsel that he not testify. He testified that on the night in question he left the Bolden residence, where defendant and Richard Hart were, in Hart's car to go to Yvonne Jackson's. He parked in front of her house and noticed a car parked across the street, facing south, which contained three people. As he walked around the back of his car, he heard shots and was hit in the back. He got a rifle out of his car and fired at the car as it sped away. He testified that the car was halfway through a left turn when he fired and that it thereafter went out of view behind a building. He further stated that he then drove to the Bolden house and told defendant that someone had shot him and that he believed he had hit one of them. He then walked off and passed out somewhere down the street and awoke in the hospital.

In its case in rebuttal the State offered the testimony of police detective John Thurman. Detective Thurman testified that on the evening of January 26 he took part in the investigation of the Rodgers' shooting. While he was in the vicinity of the Bolden residence, he heard shots and began investigating the area near to 1625 Wilford, which is the location of an abandoned house and empty field. He called for assistance at 8:42 p.m. and found Elijah Parker lying wounded in the field approximately one-half hour later. Parker told him he had been shot while in the field and, when asked by Detective Thurman who shot him, he replied that the detective had.

Raymond Herr, an investigator for the State's Attorney's office who had examined the Rodgers' vehicle, testified for the State in rebuttal to Yvonne Jackson's testimony that Elijah Parker alone shot at the car driven by Glennon Rodgers. He referred without objection to the hole in the bumper of the deceased's car as a "large caliber hole" and the hole in the trunk as a "small caliber hole" while testifying as to the location of the two holes in the rear of the auto and in the front and rear seats of the car as depicted in the photographic exhibits. Mr. Herr testified that prior to his becoming an investigator he was an East St. Louis police officer for 10 years. He had fired guns ranging from small caliber handguns to high powered rifles and shotguns and had had occasion to observe the results of the impacts of these bullets on metal objects both as a police officer and an investigator. The court thereafter overruled an objection that he was not qualified to offer an opinion whether the two holes were made by the

same weapon. Mr. Herr testified he believed two different weapons made the holes.

Defendant contends that he was not proved guilty of murder beyond a reasonable doubt. He argues that, when considered in relation to all the other evidence in this case, the testimony of eyewitness Cedric Taylor is not sufficient to convict him since it was contradicted by the testimony of Yvonne Jackson and Elijah Parker that Parker was the only one shooting at the Rodgers' vehicle and the alibi testimony of defendant and Edna Bolden. He also argues that the State presented a "single gunman" theory at trial which makes his conviction unjust in view of the fact that Elijah Parker was subsequently convicted of the same murder.

■■ It is fundamental that a reviewing court will not reverse a criminal conviction where the evidence is not so improbable as to raise a reasonable doubt of the accused's guilt. (*People v. McDonald*, 62 Ill. 2d 448, 343 N.E.2d 489.) After examining the evidence of this case in light of the relevant principles of law, we find that the evidence cannot be said to leave such a doubt.

■■ It is well settled that the testimony of a single witness if positive and credible is sufficient to support a murder conviction. (*People v. Catlett*, 48 Ill. 2d 56, 268 N.E.2d 378) and that such testimony is sufficient even though the witness is contradicted by the accused and alibi witnesses (*People v. Jackson*, 54 Ill. 2d 143, 295 N.E.2d 462; *People v. Horton*, 28 Ill. App. 3d 174, 328 N.E.2d 72; see also *People v. Johnson*, 36 Ill. App. 3d 122, 343 N.E.2d 177) since the fact that defendant denies his guilt and that defense witnesses corroborate his alibi does not, in and of itself, create a reasonable doubt of defendant's guilt (*People v. Garriott*, 20 Ill. App. 3d 994, 313 N.E.2d 189).

■■ It is the function of the trier of fact to weigh the testimony, judge the credibility of the witnesses and determine factual matters in debatable sets of circumstances (*People v. Akis*, 63 Ill. 2d 296, 347 N.E.2d 733; *People v. Morse*, 33 Ill. App. 3d 384, 342 N.E.2d 307), and, in a criminal proceeding, the trier of fact may believe part of one's testimony without believing all of it. (*People v. Holverson*, 32 Ill. App. 3d 459, 336 N.E.2d 88. See also *In re Morgan*, 35 Ill. App. 3d 10, 341 N.E.2d 19.) A reviewing court has neither the duty nor privilege to substitute its judgment as to the weight of disputed evidence or credibility of witnesses for that of the trier of fact. *People v. Henderson*, 36 Ill. App. 3d 355, 344 N.E.2d 239.

The jury in this case obviously believed the eyewitness testimony of State's witness Cedric Taylor that the defendant fired on the car with a handgun from 15 feet. We believe they were completely justified in doing so since Taylor had known the defendant for several years, apparently viewed him at the scene of the crime under good lighting conditions, and

did not appear to have any motive for falsification. The jury, at the very least, found the testimony of Yvonne Jackson and Elijah Parker unworthy of belief on the point that defendant was not involved in the shooting. We will not substitute our judgment on this matter since this determination is within its province. We note that Cedric Taylor's testimony placed both defendant and Parker at the scene and that the testimony of Yvonne Jackson carried with it a sufficient reason for her to testify that Parker alone fired the shots. Parker's account of the incident was framed in terms of self-defense thereby obviating any reason for including defendant in the picture. The credibility and weight of his testimony could reasonably have been diminished in the minds of the jury as a result of Detective Thurman's testimony that he discovered the wounded Parker sometime after 9 p.m., after hearing shots, some 2½ hours after the shooting of Glennon Rodgers.

■■ The jury was not required to believe defendant's alibi evidence over Taylor's testimony. The uncertainty of Mrs. Bolden as to times and dates may have played some part in their discounting such evidence. We are also not persuaded to find that a reasonable doubt of defendant's guilt exists because Parker was subsequently convicted of murder also. The evidence presented at this trial demonstrates that it would not be unreasonable to believe that the acts of both of these men were a concurrent cause of Glennon Rodgers' death. A conviction for murder is justified even if it is unknown which of several defendants inflicted the fatal wound if they acted in concert in the assault which resulted in the death. Proof of such common purpose can be drawn from the circumstances surrounding the commission of the act. See, *e.g., People v. Hubbard*, 4 Ill. App. 3d 729, 281 N.E.2d 767, *aff'd*, 54 Ill. 2d 546, 301 N.E.2d 290, *cert. denied*, 416 U.S. 958, 40 L. Ed. 2d 308, 94 S. Ct. 1973; *People v. Robinson*, 113 Ill. App. 2d 89, 251 N.E.2d 766 (abstract).

The defendant contends next that Raymond Herr was not qualified to give an opinion that the holes in the rear of the Rodgers' car were made by two different weapons. We do not find that the court erred in admitting his opinion testimony.

■■ Expert testimony is admissible when experience and observation in a special calling gives the witness knowledge of a subject beyond that of persons of common intelligence and ordinary experience. (*People v. Oberlander*, 109 Ill. App. 2d 469, 248 N.E.2d 805.) The trial judge is afforded a wide latitude of discretion in determining the admissibility of expert testimony and his decision will not be overturned on review unless clearly and prejudicially erroneous. *People v. Aliwoli*, 42 Ill. App. 3d 1014, 356 N.E.2d 891; *People v. Stapelton*, 4 Ill. App. 3d 477, 281 N.E.2d 76.

■■ We believe that the court did not abuse its discretion in allowing Herr to state his opinion. Mr. Herr had been a police officer for 10 years

and an investigator for an additional period of years. He testified that in those capacities he had the opportunity to fire all manner of guns and to observe the resultant effects upon metal objects. We believe such qualifications were adequate to allow the court to properly overrule defendant's objections to his testimony. Had Mr. Herr been identifying a gun as firing a particular projectile, our finding would be different. The situation here is analagous to that in *People v. McKinnie*, 18 Ill. App. 3d 1012, 310 N.E.2d 507, where the appellate court found that the court had not exceeded its discretion in allowing two men who had had considerable practical experience in military service with firearms, including handguns, to testify concerning their opinion whether shots they heard fired were from a .22 or .38 caliber gun.

Defendant's third contention is that reversible error was committed when evidence concerning other crimes and the gun found on defendant when arrested were presented to the jury. We agree and consequently remand this case for a new trial.

We have already mentioned that the testimony of Yvonne Jackson before the court without a jury revealed that she had made a written statement of her observations to two police officers which did not turn up in the State's file that was copied for purposes of defendant's discovery. After this fact became known, the court conducted a hearing on this discovery problem outside the presence of the jury. This hearing was so conducted since, as the court noted, this issue was irrelevant to the jury's determination of the guilt or innocence of defendant. At the close of this hearing, the court found that the omission was inadvertent and denied defendant's motion for a mistrial. Once the trial was resumed defendant elicited testimony from the two police officers who were involved in taking Miss Jackson's statement that they had verbally informed the State's Attorney of the statement. The prosecutor in cross-examination of these officers brought out testimony that the statement was mentioned in a meeting in which they were engaged in discussing the investigation of defendant, Parker and Hart for involvement in five other crimes. This testimony was admitted over the objections of counsel that such questions were prejudicial, irrelevant, and immaterial. An objection to a question concerning how many homicides were being discussed was sustained.

■■ A summary of the law concerning the admission of evidence of other crimes is found in the recent supreme court case *People v. Romero*, 66 Ill. 2d 325, 330, 362 N.E.2d 288, 290:

> "The general rule is that evidence of offenses other than those for which a defendant is being tried is inadmissible. (*People v. McDonald* (1975), 62 Ill. 2d 448, 455.) The underlying rationale is that such evidence 'is objectionable "not because it has no appreciable probative value, but because it has too much." (1

Wigmore, Evidence, 3rd ed., sec. 194.) The law distrusts the inference that because a man has committed other crimes he is more likely to have committed the current crime.' (*People v. Lehman* (1955), 5 Ill. 2d 337, 342.) Despite this clear risk of prejudice in the admission of such evidence, there are certain well-established exceptions to the rule:

> 'Evidence which tends to prove a fact in issue is admissible though it may be evidence showing that the accused has committed a crime other than the one for which he is being tried, and evidence which goes to show motive, intent, identity, absence of mistake or *modus operandi* is admissible though it may show the commission of a separate offense.' (*People v. McDonald* (1975), 62 Ill. 2d 448, 455.)"

It is apparent that this evidence did not prove any fact in issue in defendant's trial or fall within any of the other exceptions. We believe that the conclusion is inescapable that this evidence was inadmissible and highly prejudicial and should have been excluded. We cannot say that its admission was harmless error beyond a reasonable doubt. Nor do we believe that this testimony can be excused because the matter of the meeting was first broached by defendant.

We have already summarized above the evidence presented at trial concerning the handgun found on defendant when arrested. In deciding the question whether this testimony presents reversible error, we are presented with a most unusual set of circumstances. We reiterate that *at the conclusion* of the officer's testimony concerning the gun, the State stipulated that ballistics would show that this gun was not the murder weapon.

■■ It is a well-recognized proposition of law that a weapon, and we assume testimony concerning a weapon, may be admitted into evidence where there is proof to connect it to the defendant and the crime. (*People v. Ashley*, 18 Ill. 2d 272, 164 N.E.2d 70, *cert. denied*, 363 U.S. 815, 4 L. Ed. 2d 1157, 80 S. Ct. 1255; *People v. Jones*, 22 Ill. 2d 592, 177 N.E.2d 112.) Case law would indicate that such connection with the crime is shown if a weapon found on the defendant when arrested is "suitable for the commission of the crime charged." (See *e.g.*, *People v. Magby*, 37 Ill. 2d 197, 226 N.E.2d 33; *People v. Johnson*, 28 Ill. App. 3d 139, 327 N.E.2d 535.) Thus, the question presented here is whether a gun can be suitable for the commission of this murder when the State knows and concedes that ballistics tests show that it was not the weapon used. We believe not. Even though the stipulation was announced *after* the officer's testimony, we believe the offering of it to the jury presents an extremely prejudicial situation and reversible error. The State undoubtedly knew at the time it developed this evidence that this weapon could be ruled out as having

any connection with the crime involved. We note that the objection to the prosecutor's question concerning possession of the gun on January 26 should have been sustained since this questioning occurred after the stipulation was entered and was irrelevant to the issue at bar. We also recognize that both instances of testimony are also objectionable as being evidence of other crimes admitted without justification under any of the exceptions already noted.

Since the problem of juror bias is unlikely to recur on retrial, we decline to address that issue.

■■ Similarly, we note that the "newly discovered" evidence of Elijah Parker's subsequent conviction will be available for proper use by the defendant on retrial. However, our examination of the law convinces us that the trial court properly denied defendant's section 72 petition (Ill. Rev. Stat. 1975, ch. 110, par. 72) on the basis that "newly discovered evidence" is not grounds for a section 72 motion in a criminal case. (See *People v. Colletti*, 48 Ill. 2d 135, 268 N.E.2d 397; *People v. Freeman*, 26 Ill. App. 3d 443, 326 N.E.2d 207.) Although newly discovered evidence was grounds for a bill of review, which is also replaced by section 72, historically, this bill has only been used to review and procure relief from decrees in chancery, not criminal convictions. (See *Carbone v. Sparks*, 12 Ill. App. 2d 486, 139 N.E.2d 790; *Merrion v. O'Donnell*, 288 Ill. App. 47, 5 N.E.2d 765; Ill. Rev. Stat. 1975, ch. 110, par. 72; Ill. Ann. Stat., ch. 110, par. 72, Historical and Practice Note No. 3, at 289-91 (Smith-Hurd 1968).) In view of the historical limitations concerning utilization of these grounds and the refusal of the Illinois Supreme Court to extend its applicability to criminal convictions (*People v. Colletti*), we find defendant's argument that his petition was improperly denied unpersuasive. In any event, Parker's conviction was merely cumulative to his testimony and if known at trial would not necessarily have constituted a complete defense.

For the foregoing reasons, we reverse the judgment of the circuit court of St. Clair County and remand this cause for a new trial.

Reversed and remanded.

CARTER, P. J., and G. J. MORAN, J., concur.