THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* O. D. WADE, Defendant-Appellant.

Fifth District   No. 78-550

Opinion filed December 4, 1979.

John H. Reid and Daniel M. Kirwan, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Clyde L. Kuehn, State's Attorney, of Belleville (Raymond F. Buckley, Jr., and Gary L. Cobe, both of the State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KASSERMAN delivered the opinion of the court:

Following a jury trial, defendant was convicted in the circuit court of St. Clair County of murder and sentenced to 35 to 70 years. On direct appeal, this court reversed his conviction (*People v. Wade* (1977), 51 Ill. App. 3d 721, 366 N.E.2d 528) and remanded the cause for a new trial. A bench trial was had on remand, following which defendant was again convicted of murder. A new sentencing hearing was had, and defendant was sentenced to 14 to 21 years imprisonment. Defendant appeals, alleging there was insufficient evidence to support his conviction.

The facts relevant to this question are as follows:

In the early evening of January 26, 1975, Glennon Rodgers (the deceased) was driving a 1970 Chevrolet, which was owned by Cedric Taylor's father, in East St. Louis. Cedric Taylor, age 16, and John Billops were passengers.

About 6:30 p.m., this group, travelling south on 19th Street, stopped at a 4-way stop sign at the intersection of 19th and Central. It was just getting dark; however, there is a poolroom and a tavern at that intersection, both of which were equipped with doorway lights, and the area was illuminated by nearby street lights.

Taylor and Billops saw a white 1965 Oldsmobile parked in front of the poolroom. Both knew it was driven by Elijah Parker, Richard Hart, and defendant.

Taylor testified he heard Billops say the names of defendant, Parker, and Hart. Looking toward the poolroom door, he saw the three men. Rodgers drove slowly through the intersection. Defendant ran into the street, crouched, pointed a "pistol" toward the Chevrolet, and fired. Taylor did not indicate he saw anyone else firing, although he testified several shots were fired in all.

Billops' account of these events varies from Taylor's in that he thought it was Rodgers who said the three men's names, and that this occurred after the first shots were fired. He did not see defendant and did not notice who was at the intersection during these events.

Rodgers was shot and lost control of the car. Billops was also shot, and he and Taylor reached for the wheel and stopped the car. Billops then ran for help, and when he returned, Taylor had Rodgers out of the car. Billops went to a friend's house and then to a hospital.

When the ambulance arrived and before the police came, Taylor ran home. It was several days before he went to the police and told them of his presence at the shooting. Rodgers died of his wounds.

Taylor testified that he saw defendant almost every day and that he thought defendant had been involved in shooting three of Taylor's friends in the past.

Defendant, testifying in his own behalf, denied he was present at the shooting. He testified he was at Mrs. Bolden's residence, asleep, when Parker woke him and said he had shot someone in a Chevrolet. Parker did not mention being wounded and did not appear to be injured.

Parker was sworn as a witness for defendant, but refused to answer all questions addressed to him, citing his privilege against incriminating himself. Over the State's objection, his testimony from defendant's earlier trial was admitted in evidence. His testimony at that trial was as follows: He was alone at the time in question when he was shot in the back from a passing car. Retrieving a rifle from Hart's Oldsmobile, he returned the fire. He drove to Mrs. Bolden's house, where he called to defendant and spoke to him from the yard. He walked away, lost consciousness and awoke in a hospital.

Yvonne Jackson, testifying for defendant, stated that she was with

Parker, leaving the car he drove to enter her own house when he fired a rifle at a passing car. Its occupants did not return the fire.

Ms. Jackson's testimony at defendant's first trial was admitted in evidence. There, she testified she was on the porch of her home when she saw Parker, whom she knew, fire at a passing car. She admitted her hatred for Parker, who had gotten her and another woman pregnant.

Mrs. Bolden testified she and the defendant were at her home at the time in question, and that Parker arrived and announced from the yard that he had "got one."

Richard Hart testified that defendant was in bed asleep when Parker woke him and said he had "got one." The three men then left, walking up an alley. Parker was hit when someone came out of a house and fired at them. They left Parker and went to a friend's house where they spent the night.

State's Attorney's investigator Raymond Herr testified for the State in rebuttal that the two bullet holes he found in the Chevrolet were caused by different weapons. He based this opinion on his observation that the hole in the bumper was approximately three times the size of the hole in the trunk lid. On cross-examination, he stated he had taken into account the differences in the metals involved as well as the speed of the vehicle.

Detective John Thurman testified he received a description of a very dirty white Oldsmobile from Billops. When he located such a car outside Mrs. Bolden's residence, he radioed for a tow truck and assistance. He testified in rebuttal that, once assistance had arrived, he knocked on Mrs. Bolden's door and called out, without reply. Soon afterward, he heard a "volley" of shots from somewhere behind the residence. Investigating, he found Parker lying on the ground, bleeding profusely from an abdominal wound which was "still steaming." Thurman asked Parker who shot him; Parked replied he (Thurman) did.

It was stipulated Detective L. C. Moore would testify Parker told him he had been shot by Thurman after he failed to halt as ordered.

■■ On appeal, we are confronted with the testimony of Taylor, who knew defendant and who purported to have seen defendant firing at the car Taylor was riding in. Testimony by a single identification witness, if positive and credible, is sufficient to support a conviction. (*People v. Hefner* (1979), 70 Ill. App. 3d 693, 388 N.E.2d 1059.) The testimony of an identification witness will be strengthened to the extent of his prior acquaintance with the accused. *People v. Lumpkin* (1975), 28 Ill. App. 3d 710, 329 N.E.2d 262.

Here, Taylor's acquaintanceship with defendant provided him a basis to make a reliable identification of defendant at a reasonably short distance under what appears to have been ample artificial light. The fact

that they were acquaintances also disclosed the existence of a grudge or feud, and, hence, a motive to falsify. However, under these facts, we are not persuaded that such motive rendered Taylor's testimony less than credible. This potential bias was fully exposed before the trial court, who, as the trier of fact, was charged with weighing the credibility of the witnesses. Significantly, Taylor was straightforward about this bias from the outset, having included it in his initial statement to police.

■ Defendant urges that we discount Taylor's identification of defendant because he did not name defendant to the police until several days after the shooting. The inference defendant seeks to draw, that failure to name · defendant immediately amounts to a declaration that defendant was not present, is not compelled here. Taylor delayed altogether in reporting his presence at the shooting until some days had passed. When he made his first report, he named defendant and explained the ill will between the two groups. We might be suspicious of Taylor's testimony if he had first reported the incident without naming defendant, as such facts would suggest an attempt to falsely inculpate defendant. However, it appears Taylor's initial delay in making any report must be ascribed to some other motive under these facts. Taylor's presence at the shooting is not in doubt.

■ Defendant has conceded that the testimony of the alibi witnesses was inconsistent, contradictory, and improbable. In our opinion, the trial court was justified in not believing that testimony. It is the function of the trier of fact to weigh the testimony, judge the credibility of the witnesses and determine factual matters in debatable sets of circumstances. (*People v. Wade* (1977), 51 Ill. App. 3d 721, 366 N.E.2d 528.) The fact that defendant denies his guilt and that defense witnesses corroborate his alibi does not, in and of itself, create a reasonable doubt of defendant's guilt; and a reviewing court has neither the duty nor privilege to substitute its judgment as to the weight of disputed evidence or credibility of witnesses for that of the trier of fact. *People v. Wade.*

Here, there was evidence impeaching defendant's alibi witnesses. In particular, Ms. Jackson's testimony indicated reasons she might have for testifying that Parker alone did the shooting. We will not substitute our judgment on the witness' credibility for that of the trier of fact.

The admissibility of the testimony of Raymond Herr was challenged by defendant at his first trial; however, it was introduced without objection in this cause. We do not find his opinion that the two bullet holes in the Chevrolet were made by different weapons to be critical to the State's case. If it were to be assumed that both Parker and defendant fired on the Chevrolet but only Parker caused the bullet holes, defendant's accountability for the offense remains clear. We note the State made no

effort to prove that a bullet from defendant's weapon in fact struck the victim.

■■ Finally, we must reject defendant's contention that the trial court's delay in announcing the finding of guilt amounted to a showing of doubt on the part of the trier of fact. *People v. Warren* (1976), 40 Ill. App. 3d 1008, 353 N.E.2d 250, cited by defendant, is inapposite. There, unlike the instant case, the court in a bench trial expressly stated its doubts as to the State's proof. The instant delay must also be distinguished from delay by a deliberating jury in announcing its verdict. Here, there were other likely causes for an extended delay. The record reveals the court was not yet in possession of all transcripts and documentary proof admitted into evidence at the time it took the matter under advisement. Further, the court presumably had other responsibilities during this period, whereas a deliberating jury would have but one task before it. The record does not reveal how long the court in fact considered its decision. Accordingly, we do not find the instant delay tantamount to an affirmative indication of doubt by the trier of fact.

■■ We conclude that the evidence adduced was sufficient to support defendant's conviction.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

JONES, P. J., and KARNS, J., concur.