THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLAY BURN AMBROSE, Defendant-Appellant.

(No. 72-253;

Third District—May 27, 1975.

John Mathers, of Peoria, for appellant.

Michael Mihm, State's Attorney, of Peoria (James Christy, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

The defendant, Clay Burn Ambrose, was charged by indictment with the conspiracy to commit an armed robbery at the R. C. Cola Company in Pioneer Park, of Peoria County, between October 27, 1971, and December 9, 1971. He was convicted after a jury trial and sentenced to 3 to 5 years in the Illinois State Penitentiary.

In this appeal from his conviction the defendant claims that he was not convicted of conspiracy to commit armed robbery beyond a reasonable doubt. He bases this contention on the allegation that the State failed to adequately prove that there was an agreement or common design between coconspirators. He also argues the State failed to prove an overt act toward the completion of armed robbery was committed during the conspiracy. He further asserts that the act in furtherance of the conspiracy had to involve the use of a dangerous weapon. The defendant submits that he was denied a fair trial because of several other errors allegedly committed by the trial judge. He urges that it was error for the trial court to admit evidence concerning events occurring allegedly after the conspiracy had ended. He further claims there was reversible error in allowing the prosecutor to imply in his closing argument that there was more than the one conspiracy involved. Finally, the defendant contends that his trial was prejudiced because the trial court did not give IPI—Criminal Instruction No. 14.01, defining the elements of armed robbery which was the object of the conspiracy.

The defendant allegedly conspired with one Thomas Ford to rob the plant manager of the R. C. Cola Company at gunpoint as he left the company premises in Peoria with money to be deposited in a bank. The manager performed this money transfer on a routine basis every day. He left at the same time and traveled over the same route on each daily trip. On October 27, 1971, the defendant and Thomas Ford met at Ford's house. There they agreed to commit the armed robbery. Later that same day the defendant, Thomas Ford, Marilyn Lovins, and Ford's family made a trip to the scene where the robbery would occur. They surveyed

the scene and established the details of their plan. Testimony at the trial showed that the defendant's finance, Marilyn Lovins, had agreed to take part in the robbery. She was to drive the getaway car. Testimony also indicated that the defendant's father had agreed to help with the armed robbery. Following their initial conversation and survey of the scene the defendant and Thomas Ford and Marilyn Lovins made several trips to the premises of the R. C. Cola Company to observe the manager transfer the money to a bank. These later trips to the proposed scene were made individually by the defendant and Thomas Ford and together with other people. On October 29, 1971, after a trip to the scene with his brother, Thomas Ford called the police and became an informer. He was directed to continue his activities with the defendant to ascertain the date of the proposed armed robbery. Before Ford could accomplish this he became involved in an argument with the defendant and withdrew from the conspiracy or plot. One day later, November 8, 1971, he communicated his withdrawal to the police.

■■ Defendant first claims that no agreement or common design to commit the armed robbery existed. It is argued that Ford never had the required intent to commit the armed robbery because he was or turned police informer. The facts in the case indicate that outwardly it appeared the defendant and Ford had come to an agreement on October 27, 1971, to commit the armed robbery. The evidence at the trial was in conflict as to which party instigated the criminal design. Nevertheless, there was ample evidence to allow the jury to reasonably believe that the two men had agreed to commit the crime. That fact determination cannot be disputed. We find that Ford had the requisite intent.

The State would have this court read the conspiracy statute of the Illinois Criminal Code to hold that only the intent of the individual defendant is necessary in a conspiracy case. The State feels that it is not an element of the conspiracy to prove that the coconspirator Ford needed to have the intent to agree with the defendant and the intent to carry out the scheme. With this we cannot agree. Changes in our criminal code in recent years provide that the coconspirators do not have to be prosecuted or even be guilty of an offense in order to convict a defendant of conspiracy. Yet, the older case law requiring two or more people for a conspiracy is still valid. It would be absurd to claim a conspiracy could be entered into by one individual alone. By the terms of our statute the crime of conspiracy involves an agreement. The definition of agreement implies an intent to agree between a minimum of two people. Therefore the State's contention that the intent of a coconspirator to agree with the defendant to commit armed robbery is unnecessary is fallacious.

The defendant asserts that another element of the crime of conspiracy also has not been adquately proven; according to section 8—2 of the Criminal Code (Ill. Rev. Stat., ch. 38, par. 8—2), some overt act in furtherance of agreement must be committed. Despite defendant's contention that there was no overt act sufficient to satisfy this element, we feel several sufficient overt acts were committed. The trio of Ford, the defendant, and Marilyn Lovins traveled to the scene of the proposed crime immediately after the agreement to survey the area. Ford bought a car to be used in the armed robbery. He also went to the scene himself without the defendant several times to observe the manager. The defendant accompanied by Marilyn Lovins went to survey the R. C. Cola Company premises without Ford present. Since a coconspirator, by himself, can commit the overt act in furtherance of the conspiracy to bind his fellow coconspirators, these acts of the several persons involved could easily be found by the jury to satisfy the overt act requirement. The acts of observation of the premises of the R. C. Cola Company after the agreement to rob its manager at gunpoint are clearly sufficient to meet the overt act requirement of the conspiracy statute. The defendant claims these acts of observation were only in preparation for the armed robbery. By this he admits that the observation was a sufficient overt act in furtherance of the conspiracy. The defendant has confused the offense of conspiracy with that of attempt. One element of the crime of attempt is a substantial step toward the commission of the object offense. On the other hand, the conspiracy statute requires a much lesser step toward the completion of the object offense for the conspiracy to exist. For conspiracy, only an overt act in furtherance of the conspiracy is needed. In our opinion, an act of planning is therefore a sufficient overt act for conspiracy.

Often conspiracies are hard to detect, and since such combinations of criminals impose a greater threat to the public than the criminal acting alone, the legislature obviously intended that any overt act in furtherance of the conspiracy, even in the planning stage, would satisfy that element of the offense of conspiracy. If that had not been their intention there would have been no need to differentiate between the overt act necessary for attempt and the overt act necessary for conspiracy as the statute does. According to the prevailing view, *People v. Kroll*, 4 Ill.App.3d 203, 280 N.E.2d 258 (1972), only one act in furtherance of the conspiracy is necessary. That act can be done by either the defendant or a coconspirator. Here there were numerous acts presented in the evidence from which a jury could properly find that the overt act element of the conspiracy charge was proven.

■■ The defendant erroneously argues that the overt act sufficient to

establish a conspiracy to commit armed robbery must be one using a dangerous weapon. The testimony is in conflict regarding whether Marilyn Lovins had a gun at the initial agreement and on the trip to observe the R. C. Cola Company premises. The jury could well have believed she was in possession of the gun when the overt act was accomplished. Nevertheless, the defendant is again confusing the elements of the crime of conspiracy with those of attempt. Further, our conspiracy statute does not refer to the nature of the offense that is the object of the conspiracy except that it must be an offense as defined by the Illinois Criminal Code. For a conspiracy, the agreement to commit, with the intent to commit the object offense, and the commission of an act in furtherance of the conspiracy is all that is required. (*People v. Graham,* 1 Ill.App.3d 749, 274 N.E.2d 370 (1971).) The one overt act in furtherance does not necessarily have to involve one of the elements of the object offense, armed robbery. The heart of conspiracy is the agreement, not the offense that is the object of the agreement. The offense of conspiracy is a separate offense from that which the conspirators have agreed to commit. None of the elements of the object offense need be proven. The conspiracy statute does not require that the overt act in this case have a dangerous weapon involved.

■■ It is the defendant's next contention that he was denied a fair trial because the State's case was based upon inadmissible testimony. The defendant claims that Thomas Ford's announced withdrawal from the conspiracy on November 7, 1971, certainly brought it to an end. The objectionable testimony was of the defendant's overt acts of observing the R. C. Cola Company premises after that date. Various law enforcement officers on surveillance at the scene observed the defendant's acts. The State argues that a conspiracy continues so long as overt acts in furtherance of that conspiracy are committed by any one of the conspirators. (*People v. Drury,* 335 Ill. 539, 167 N.E. 823 (1929)). The present case is distinguishable. If the defendant and Ford were the only conspirators, the conspiracy was terminated when Ford effectively withdrew from it. However, the evidence indicates that there were two other conspirators besides the defendant and Ford. There was testimony that defendant's father and/or Marilyn Lovins were also conspirators with the defendant. The jury could reasonably conclude that there were two other conspirators. Therefore, the testimony concerning the defendant's acts after Ford withdrew from the conspiracy were admissible. In any event, the defendant failed to object to this testimony at trial. It also is not plain error affecting a substantial right and therefore cannot be raised for the first time in appeal through the device of the plain error doctrine.

It is our opinion that the trial judge could have within his discretion allowed the testimony of defendant's acts after November 7, 1971, even if the conspiracy had ended with Ford's withdrawal. This testimony tended to corroborate other evidence showing the existence of the conspiracy while not working a prejudice against the defendant. (*People v. Bravos*, 114 Ill.App.2d 298, 252 N.E.2d 776 (1969).) We find that it was not error to admit the testimony.

■■ The defendant's next claim of error on this appeal is the following statement made by the prosecutor in his closing argument which allegedly was improper, "This leaves only, at that point, Marilyn and Clay [the defendant], you've got two coconspirators, Ford is out of the picture." The defendant contends this implication that Marilyn Lovins was a coconspirator with the defendant in another unproven conspiracy prejudiced the jury in returning a guilty verdict. The testimony at the trial presented evidence from which the jury could decide that Marilyn Lovins was a part of *the* conspiracy. The defendant failed to object to that evidence as it was introduced. He objected only during the closing argument. Such objection was not timely nor sufficient. Once it was admitted into evidence the prosecutor could comment on it in his closing argument. *Goldstein v. Hertz Corp.*, 16 Ill.App.3d 89, 305 N.E.2d 617 (1973); *Maguire v. Waukegan Park Dist.* 4 Ill.App.3d. 800, 282 N.E.2d 6 (1972).

■■ Lastly, the defendant objects because IPI—Criminal No. 14.01 jury instruction was not given. The essence of this particular jury instruction is that it defines the elements of armed robbery. This instruction was not offered by either the defense or the prosecution. The defendant claims it was error for the trial court not to give the instruction on its own initiative. We are referred to the attempt (to commit robbery) case of *People v. Davis*, 74 Ill.App.2d 450, 221 N.E.2d 63 (1966), and supporting cases. In all of these cases it was held to be error for the trial judge to fail to instruct the jury as to some element of the crime charged. Here the trial judge instructed the jury fully and adequately on all the elements of the offense of conspiracy. What we must decide is whether the failure of the court to give any instruction on the elements of armed robbery in instructing the jury on the necessary elements of the crime of conspiracy was reversible error. It does not necessarily follow that the elements of armed robbery are elements of conspiracy to commit armed robbery. In *People v. Davis* the court ruled that the trial court erred in not informing the jury of the elements of robbery in an instruction. The court felt that the object offense of the crime of *attempt* was an element of the crime charged. The *Davis* case reasoning is that since it is necessary to prove the completion of an act which is a substantial step toward the completion of the object offense to prove an attempt, the trial court on its own

should have given the applicable instruction on all the elements of the object offense of robbery. We are asked by analogy to the *Davis* case to hold that the object offense in the crime of conspiracy is a necessary element of the crime which must be fully explained to the jury. In *People v. Davis* the court should have given the instruction on the elements of robbery even though no instruction was requested by the defendant. In the present case we will not insist on that result. Surely the giving of an instruction on the elements of armed robbery in this conspiracy trial would have been proper whether on the court's own initiative or upon counsel's request. To give the applicable instruction would not have been error. We rule that it was also not reversible error to fail to give it when not so requested.

The gist of the offense of conspiracy is the agreement to commit the object offense rather than the object offense itself. It is not necessary to prove an act in furtherance of the actual object offense for conspiracy as it would be for attempt. A reading of section 8—2 of the Criminal Code (Ill. Rev. Stat., ch. 38, par. 8—2) indicates that only an act in furtherance of the agreement is necessary for conspiracy. This distinction from *People v. Davis* controls the outcome of this case. The jury as ordinary laymen have a general knowledge of what constitutes armed robbery which is self-defining. If the offense which was the object of the conspiracy were some technical or unusually complex offense of which the trier of fact has no general impression, a suitable instruction explaining such an offense would be mandatory. This is not such a case.

■■ The defendant is entitled to the benefit of the favorable provisions of the Unified Code of Corrections even though he was sentenced prior to January 1, 1973, the effective date of that statute. According to prevailing case law, the Unified Code of Corrections governs the sentence imposed in cases pending on appeal. (*People v. Harvey*, 53 Ill.2d 585, 294 N.E.2d 269 (1973); *People v. Snow*, 21 Ill.App.3d 873, 316 N.E.2d 216 (1974); *People v. Williams* 60 Ill.2d 1, 322 N.E.2d 819 (1975).) Because the defendant's sentence exceeded that allowable under the Unified Code of Corrections, the case should be remanded to the trial court for resentencing under the provisions of that statute. In all other respects the judgment of the Circuit Court of Peoria County should be and is herewith affirmed.

Judgment of conviction affirmed, cause remanded for resentencing consistent with this opinion.

STOUDER and STENGEL, JJ., concur.