THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMALJAH ALIWOLI, Defendant-Appellant.

First District (4th Division)   No. 56529

Opinion filed October 6, 1976.

James R. Streicker and Rebecca Davidson, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and David A. Novoselsky, Assistant State's Attorneys, and Scott Mayer, law student, of counsel), for the People.

Mr. JUSTICE BURMAN delivered the opinion of the court:

The defendant, Jamaljah Aliwoli, was charged by indictment with three counts of attempt murder and two counts of aggravated battery. Following the defendant (1) entering a plea of not guilty at his arraignment and (2) seeking and obtaining certain pre-trial discovery information, the cause proceeded to a jury trial. Subsequent to hearing the evidence proffered by both sides, the jury found the defendant guilty of two counts of attempt murder, two counts of aggravated assault,[1] and two counts of aggravated battery.

In seeking a reversal of his convictions, the defendant contends that he was denied a fair trial when the trial court refused to permit (1) a psychiatrist to testify in his behalf; (2) his own testimony that he had previously been the victim of a robbery; and (3) a courtroom demonstration evincing how he had been wounded. Moreover, in a supplemental brief, the defendant maintains that the trial court erred in imposing a judgment of conviction for two acts of aggravated battery and for both aggravated assault and attempt murder where both offenses respectively arose from a single act. He also asserts that his sentence of 5 to 10 years for aggravated battery does not comply with the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1001—1—1 et seq.) and accordingly must be reduced.

A review of the record reveals that on August 10, 1970, approximately at 1:15 a.m., Lyle Dennis Sullivan, an assistant chief accountant for an oil company, was at the Howard elevated station in Evanston, Illinois. Due

---

[1] Although the defendant was not formally charged in the indictment with aggravated assault, the jury did receive a written instruction informing them that the defendant was charged with attempt murder which included the crime of aggravated assault.

to the lateness of the hour, he decided to forego the train ride and instead, take a taxicab to his home located at 1612 West 87th Street in Chicago, Illinois. He then hailed a cab driven by the defendant and, after entering said vehicle, he informed the latter of his destination. When the cab reached his home at about 2:10 a.m., Mr. Sullivan discovered that he did not have enough money to pay the $10.90 fare. What subsequently ensued was subject to conflicting accounts presented at trial.

According to the testimony of Mr. Sullivan, he looked through his wallet and informed the defendant that he had only $1.50 in his possession, but that he had some money in his apartment. While the defendant was at first reluctant to leave his cab, he finally accompanied Mr. Sullivan up the front stairwell to the second floor apartment. After opening the door of his apartment with his key, Mr. Sullivan told the defendant to wait in the living room hallway while he searched in his bedroom for the cab fare. Upon finding only $2 in his dresser drawer, Mr. Sullivan informed the defendant that he would give him the money he possessed as a tip if he (the defendant) would accept his check. While he assured the defendant that his check was good, the latter initially refused to accept the check. However, subsequent to Mr. Sullivan's suggestion that the defendant call the police, the defendant did take the check and departed the apartment via the front door.

Approximately 15 seconds later, Mr. Sullivan heard some noise emanating from the window in his living room which faced the back of the apartment building. After discovering that it was the defendant who was screaming and incoherently muttering outside such window, he warned the latter that the police would be contacted if he did not leave the back porch. The unintelligible comments subsided and Mr. Sullivan proceeded to turn off the living room lamp when he heard a noise which sounded like a firecracker. He then felt a sharp pain coming from his elbow and observed blood pouring out of his arm. He was thereafter taken to a hospital where he remained for 3 days.

In contradistinction to such account of what transpired prior to Mr. Sullivan being wounded, the defendant testified that when they reached Mr. Sullivan's residence, he was asked to pull in back of the building. The defendant refused and after being informed that the money was upstairs, he told Mr. Sullivan to leave his wallet or keys as security. When the latter declined to possess either items, the defendant followed him to the back of the building where the two proceeded up a narrow wooden staircase to the second floor. The defendant expounded that Mr. Sullivan entered the apartment by opening a window on the back porch. After a few minutes had elapsed, Mr. Sullivan opened the door and handed the defendant a check. The defendant thereupon told his passenger that cab drivers were not allowed to take checks but Mr. Sullivan insisted that the check was

good. Subsequent to the defendant's remark that the police should be called, Mr. Sullivan opened the door and told the defendant to enter his apartment.

Once inside Mr. Sullivan's abode, the defendant proceeded to call the police but put the telephone down because Mr. Sullivan kept running in and out of the room, thus causing him concern about his passenger's behavior. Mr. Sullivan then told the defendant that he paid him and he must leave his apartment. After the defendant departed the same way he entered, an argument over the fare continued through the window. Subsequent to each individual renewing his position with regard to said subject, the defendant heard a shot, saw "a fire" from a gun which seemed to be in Mr. Sullivan's right hand,[2] and felt something sting his hand. He then pulled a gun from his left hand pocket, fired it into the apartment, and ran down the back stairs toward his cab.

When the defendant reached his vehicle, there was a marked Chicago police car about 5 feet behind the cab with two uniformed policemen sitting therein. Although the defendant testified that in his 13 years of driving a cab, he always recognized a Chicago police car, he claimed on the night in question, he did not recognize the car as one belonging to the police. Rather, he thought that the men inside said vehicle were told to hold him up. Based on such thinking, the defendant fired two bullets at the two police officers that struck the windshield of their vehicle but did not injure either of them. The officers returned the fire and shattered the cab's rear window. The defendant then fled in his cab with the police officers in pursuit. The chase went on for several blocks until the defendant lost control of his cab and crashed into a salt box at 79th Street and Ashland Avenue.[3] The police officers departed from their car and ran to the cab. While one of the officers opened the cab door, the defendant, who was still sitting in the driver's seat, pointed his gun at the policemen but his weapon was empty.[4] The officer who opened the door attempted to fire his gun but it was also empty. However, the other policeman did fire his gun and hit the defendant in the right wrist. Subsequent to a struggle with the policemen, the defendant was removed from the cab, placed under arrest, and transported to a hospital. The police also recovered his gun with five spent cartridges on the floor of the cab.

---

[2] It is important to note that Mr. Sullivan testified on redirect examination that he never owned, used, nor fired a gun.

[3] On direct examination, the defendant presented a divergent account of the chase which, parenthetically, reached speeds of 60 miles per hour. He testified that when he reached 79th and Ashland, he saw a police car parked on the north side of 79th Street. He expounded that he left his cab but in his haste to get to the police car, he apparently left his vehicle in gear and the cab "cruised into the curb and hit a salt box." Upon reaching the police car, he informed the officer that Mr. Sullivan had tried to rob him of his fare.

[4] The defendant also indicated on direct examination that he (1) was the one who opened the cab door and (2) did not point a revolver at the police officers.

At the conclusion of the evidence and the respective closing arguments of both the prosecutor and defense counsel, the jury returned a verdict finding the defendant not guilty of attempt murder of Mr. Sullivan, but guilty of aggravated battery of such individual and attempt murder and aggravated assault of the two police officers. The trial court polled the jurors and then entered judgment on the verdict. Moreover, on October 14, 1971, defense counsel's post-trial motions for a new trial and an arrest in judgment were denied. Subsequent to a hearing in aggravation and mitigation on that date, the defendant was sentenced to concurrent prison terms of 8 to 20 years for attempt murder of the police officers and 5 to 10 years for the aggravated battery of Mr. Sullivan. The defendant then filed a notice of appeal on October 27, 1971.

We first consider the defendant's contention that he was denied a fair trial when the trial court refused to permit Dr. Kermit Mehlinger, a psychiatrist, to testify. In support of such assertion, the defendant claims that the purpose of calling Dr. Mehlinger, an expert with regard to illusionary perception or delusion, was to elicit his professional opinion so that the jury could be informed that in a panic situation in which a person is in fear of his life, he can perceive a physical surrounding that does not really exist. Such expert would also be extremely beneficial in determining whether the defendant had the requisite intent to commit attempt murder. Since the trial court precluded the psychiatrist's testimony, it is argued that the defendant's presentation of his defense was severely limited, thereby warranting a reversal of his conviction. We are not in accord.

■■ It is well settled in Illinois that the trial judge is afforded wide latitude of discretion in determining the admissibility of expert testimony and his decision will not be overturned on review unless clearly and prejudicially erroneous. (*E.g., People v. Stapelton,* 4 Ill. App. 3d 477, 480, 281 N.E.2d 76, 78; *People v. Oberlander,* 109 Ill. App. 2d 469, 471, 248 N.E.2d 805, 807.) Considering such tenet in light of the evidence at bar, we believe that the defendant was not prejudiced by the trial court's decision. As clearly evinced from defense counsel's opening statement to the jury[5] as well as his colloquy with the trial judge in the latter's chambers concerning the psychiatrist's testimony,[6] the defendant's theory of

---

[5] Defense counsel's opening statement provided in relevant part:
"And we will show a self-defense situation here; that we attempted to prevent a person from perhaps robbing us; certainly that we are attempting to defend ourselves all the way through this case."

[6] When the trial judge and counsels for both sides proceeded to the former's chambers to discuss the merits of the controverted expert testimony, defense counsel proffered the following comments:
"I intend by Mr. Mehlinger, who is a psychiatrist, to show not the reasonableness of the situation which is the province of the Jury, and not that my client is insane. I have not offered to the State notice of an insanity plea, and I don't intend that to be my plea."

defense to the charges at bar was not insanity, but self-defense. Such defense has consistently been held to pose a question of fact to be resolved by the jury. (*E.g., People v. Muldrow*, 30 Ill. App. 3d 209, 219, 332 N.E.2d 664, 672; *People v. Harling*, 29 Ill. App. 3d 1053, 1057, 331 N.E.2d 653, 656.) Moreover, it is not incumbent upon a jury to accept the defendant's theory of self-defense where the facts and circumstances proven indicate a situation contrary to that asserted by the defendant. *E.g., People v. Warren* 33 Ill. 2d 168, 174, 210 N.E.2d 507, 510; *People v. Neal*, 26 Ill. App. 3d 22, 24, 324 N.E.2d 476, 478.

While the defendant testified at trial that he believed under the circumstances that the passenger in his cab as well as the two other men (police officers) were conspiring to rob him, we believe that the record did not buttress his position that deadly force was necessary to prevent death or great bodily harm to him. With regard to Mr. Sullivan, the defendant testified that he was disturbed when the former individual told him he did not have the cab fare. Moreover, even though there is a dispute over what Mr. Sullivan told the defendant in his apartment after he gave him a check, the defendant admittedly stated at trial that he did not leave the building to a place of safety, but continued to argue with Mr. Sullivan through the window on the back porch. Also, while the defendant subsequently claimed that he heard a shot, he again failed to depart such locale but instead, pulled out a gun and commenced shooting at Mr. Sullivan through the window.

Besides the incongruity between the defendant's claim of self-defense and the above evidence concerning his encounter with Mr. Sullivan, his testimony regarding his confrontation with the police officers also does not coincide with his self-defense contention. Although the defendant maintained that he thought the individuals sitting in the vehicle that was parked behind his cab were told by Mr. Sullivan to hold him up, he admitted on cross-examination that the two men did not do anything so as to prompt his lethal action of firing two bullets at them. Moreover, while the defendant claimed he did not recognize the officers' police car on the night in question, he acknowledged that in his 13 years of being a cab driver, he always recognized Chicago police cars. In addition, the testimony of the police officers indicated that the lighting conditions at 87th and Ashland Avenue were good since the street lights well lit the area and the corner liquor store lights remained on all night. Thus, in light of such inconsistencies between the defense proferred in the defendant's behalf and the above testimony elicited at trial, we are of the opinion that the trial court's decision was not clearly nor prejudicially erroneous since it is not reasonably probable that the jury's verdict would have been different had the expert been permitted to testify.

We also believe that the psychiatrist's testimony should not have been

admitted on the issue of whether the defendant had the requisite criminal intent to commit attempt murder. It is well established in this State that the essence of the offense of attempt murder is a specific intent to take a human life. (*E.g., People v. McChristian,* 18 Ill. App. 3d 87, 90, 309 N.E.2d 388, 391; *People v. De Savieu,* 14 Ill. App. 3d 912, 917-18, 303 N.E.2d 782, 788.) In ascertaining this prerequisite, it has uniformly been held that such intent to take a life raises a question of fact for the jury (*People v. Miller,* 55 Ill. App. 2d 436, 205 N.E.2d 49 (abstract opinion)) which can be inferred from (1) the character of the assault, (2) the use of a deadly weapon, and (3) other circumstances. *E.g., People v. Koshiol,* 45 Ill. 2d 573, 578, 262 N.E.2d 446, 449; *People v. Carter,* 21 Ill. App. 3d 207, 315 N.E.2d 47 (abstract opinion).

■■ Applying these precepts to the case at bar, it is apparent that the defendant's contention is without merit. In the first place the defendant admitted to shooting at the police officers in the car behind his cab even though (1) he did not know who they were and (2) the officers did not provoke such lethal conduct. Moreover, the defendant used a .38-caliber revolver in instituting his attack on the police officers. Further, the fact that the defendant (1) fled the scene of his initial encounter with the police, (2) engaged in a high speed chase before his car hit a city salt box, and (3) again attempted to kill the officers when they apprehended him from his cab lends additional credence to the position that he possessed the specific intent to kill the police officers. Based on such evidence, we therefore believe that the testimony of the psychiatrist would not only usurp the province of the jury, but it would probably not have persuaded them in resolving such issue of fact.

■■ We further reject the defendant's assertion that he was denied a fair trial when the trial court refused to allow the defendant to testify that he had been the victim of a robbery prior to the incident at bar. While the defendant posits that the jury should have been allowed to consider the prior robbery of the defendant as a circumstance supporting his theory of self-defense, we agree with the trial court that such evidence was irrelevant and immaterial since the instant case did not entail the commission of a robbery. Contrary to prior adjudications in which evidence of a victim's previous threats to a particular defendant were held to be admissible where the defendant relied upon self-defense (*People v. Davis,* 29 Ill. 2d 127, 129-30, 193 N.E.2d 841, 843; *People v. Herron,* 125 Ill. App. 2d 18, 23, 260 N.E.2d 428, 430), the instant case involved a situation where the defendant never met nor knew Mr. Sullivan before the night of the shooting. Moreover, the record is devoid of any testimony indicating that the defendant entertained any fear of being robbed by Mr. Sullivan when the two individuals were in the defendant's cab or in Sullivan's apartment. Hence, we are of the opinion

that the fact that the defendant had been robbed sometime in the past by some unknown person was irrelevant to his assertion of self-defense and was properly excluded by the trial court.

■■ The defendant next contends that the trial court erred in disallowing him to demonstrate how he held his gun at the time that one of the police officers claimed to have shot him. To foster such assertion, the defendant maintains that the jury should have been permitted to see whether the bullet fired by the police officer could have struck the defendant's wrist or whether the position of the wound was such that it confirmed his version that he was shot by Mr. Sullivan. Regardless of the purpose of such demonstration, it must be remembered that a trial judge has a wide degree of discretion in ruling upon the admissibility of courtroom demonstrations (*e.g., People v. Soto*, 35 Ill. App. 3d 166, 170, 341 N.E.2d 107, 111; *People v. Pisarski*, 6 Ill. App. 3d 235, 241-42, 285 N.E.2d 551, 556), and the exercise of such discretion will not be interfered with unless there has been an abuse to the prejudice of the accused. (*People v. Navis*, 24 Ill. App. 3d 842, 848, 321 N.E.2d 500, 505.) Moreover, in evaluating such discretion, emphasis is placed on whether the demonstration would be (1) probative of the facts in issue and (2) conducted under substantially similar conditions and circumstances as those which surrounded the original transaction or occurrence. *People v. Carbona*, 27 Ill. App. 3d 988, 1003-04, 327 N.E.2d 546, 561); McCormick, Evidence §202, at 485 (2nd ed. 1972).

■■ Considering the above tenets, we believe that the trial court did not abuse its discretion so as to prejudice the defendant. As noted by the prosecutor and the trial judge during a side bar over this subject, the defendant could not substantially recreate in a courtroom demonstration the conditions existing at the time that he either (1) was on Mr. Sullivan's back porch where he alleged he was shot or (2) was sitting in his cab following the chase when the door was thrown open and the police officer shot him in the wrist. Moreover, the probativeness of this demonstration is somewhat suspect since the defendant's account of his apprehension by the police as well as his demonstration of the scar on his wrist had already been presented to the jury to be weighed against the police officer's eyewitness testimony that he shot the defendant in the wrist and saw blood emanating from the wound. We therefore believe that the trial court properly exercised its discretion and the denial of such controverted demonstration did not infringe the defendant's right to a fair trial.

■■ Despite our findings concerning the above evidentiary issues, we believe that the contentions proffered by the defendant . in his supplemental brief respectively warrant a modification of his conviction

and the sentence he received. Regarding his conviction, the jury found the defendant guilty of (1) two counts of aggravated battery for using a deadly weapon against Mr. Sullivan (Ill. Rev. Stat. 1969, ch. 38, par. 12—4(b)(11)) and causing great bodily harm to such individual (Ill. Rev. Stat. 1969, ch. 38, par. 12—4(a)) and (2) two counts of aggravated assault and two counts of attempt murder for his actions against the two police officers at bar. While the trial court, in sentencing the defendant, adhered to the prosecutor's request during the hearing in aggravation and mitigation for the merger of (1) the two counts of aggravated assault into the attempt murder counts and (2) the two counts of an aggravated battery into just one count of said offense, the record still shows that the court preceded such litigious efforts by entering a judgment of conviction on the jury's verdict. As the defendant contends and the State concedes, such conduct is contrary to the well recognized precept that where two offenses arise out of the same transaction, the conviction and sentence should be only as to the greater offense. (*E.g., People v. Lilly,* 56 Ill. 2d 493, 495, 309 N.E.2d 1, 2; *People v. Ford,* 34 Ill. App. 3d 79, 84, 339 N.E.2d 293, 297.) Since the disputed convictions arose from the criminal acts when the defendant respectively (1) shot through a window and wounded Mr. Sullivan and (2) fired two bullets at the two police officers, we are of the opinion that the trial court should have vacated one count of aggravated battery and two counts of aggravated assault and just have entered a judgment of conviction for aggravated battery with a deadly weapon (*People v. Smith,* 14 Ill. App. 3d 818, 303 N.E.2d 545) and two counts of attempt murder.

We also believe that the defendant's sentence for aggravated battery does not conform to the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1001—1—1 *et seq.*) and should accordingly be modified. Pursuant to section 8—2—4 of the Code, the sentencing provisions of the Code are applicable to a prosecution of an offender which commenced prior to the effective date of this legislative enactment provided that the offense being prosecuted had not "reached the sentencing stage or a final adjudication * * *." (Ill. Rev. Stat. 1973, ch. 38, par. 1008—2—4.) Moreover, judicial construction of this statutory provision has indicated that a "final adjudication" has not occurred where the offender had already been sentenced prior to the effective date of the Code, but his direct appeal was still *pending as of such effective date. E.g., People v. Harvey,* 53 Ill. 2d 585, 590, 294 N.E.2d 269, 272; *People v. Chupich,* 53 Ill. 2d 572, 584, 295 N.E.2d 1, 8; *People v. Ambrose,* 28 Ill. App. 3d 627, 633, 329 N.E.2d 11, 17.

■■ Based on such edicts, we believe that the sentencing provisions of the Unified Code of Corrections were applicable to the case at bar.

Although the record reveals that the defendant was sentenced prior to January 1, 1973,[7] the effective date of the Code, the record also demonstrated that the defendant's direct appeal was still pending as of such date. Thus, the offenses for which the defendant was being prosecuted did not reach a final adjudication and in accordance with section 5—8—1(b)(4) (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(b)(4)) and section 5—8—1(c)(4) (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c)(4)) of the Code,[8] the defendant's sentence for aggravated battery should have been reduced from 5 to 10 years to 3 1/3 to 10 years.

For the foregoing reasons, the judgment of the trial court is affirmed as to the convictions of aggravated battery with a deadly weapon of Mr. Sullivan and two counts of attempt murder of the police officers. The judgment regarding the convictions for aggravated battery resulting in great bodily harm of Mr. Sullivan and two counts of aggravated assault of the police officers, is reversed and vacated. Moreover, the defendant's sentence pertaining to the aggravated battery conviction is modified from 5 to 10 years to 3 1/3 to 10 years.

Affirmed in part, reversed and vacated in part and sentence modified.

JOHNSON, P. J., and DIERINGER, J., concur.

---

[7] The defendant was sentenced on October 14, 1971.

[8] Since the offense of aggravated battery is considered a class 3 felony, the above enunciated provisions respectively establish the following maximum and minimum terms of incarceration for such offense.

"(b) The maximum term shall be set according to the following limitations:
* * *
(4) for a Class 3 felony the maximum term shall be any term in excess of one year not exceeding 10 years." (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(b)(4).)

"(c) The minimum term shall be set according to the following limitations:
* * *
(4) for a Class 3 felony the minimum term shall be 1 year unless the court, having regard to the nature and circumstances of the offense and the history and character of the defendant sets a higher minimum term, which shall not be greater than one-third of the maximum term set in that case by the court." (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c)(4).)