THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JEFFREY ELDER, Defendant-Appellant.

Third District   No. 3—91—0056

Opinion filed September 25, 1991.

Rudman & Sabuco, of Joliet (Roy A. Sabuco, of counsel), for appellant.

Edward Burmila, Jr., State's Attorney, of Joliet (Terry A. Mertel, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SLATER delivered the opinion of the court:

Defendant Jeffrey Elder was convicted of first degree murder (Ill. Rev. Stat. 1989, ch. 38, par. 9—1(a)(2)) and attempted first degree murder (Ill. Rev. Stat. 1989, ch. 38, par. 8—4). Defendant raises the following issues on appeal: (1) whether the trial court erred in excluding testimony of defendant's expert witness regarding the defendant's mental state at the time of the offense and allowing the State's ex-

pert witness to testify in rebuttal; (2) whether the trial court erred in refusing to instruct the jury on second degree murder; and (3) whether the defendant's sentence was excessive. We affirm.

The record shows that the defendant and the murder victim, Lynn Mallas, had an intimate relationship, but were never married. Mallas broke off the relationship and moved out of the defendant's apartment some time in March or April of 1990. On June 2, 1990, the defendant saw Mallas, her two-year-old daughter Angela, and her fiance, Tom Wicks, in an automobile. The defendant, in a rented car, followed them to Wicks' apartment. The defendant blocked Mallas' exit from the car, and they exchanged words. As Mallas tried to get past him, the defendant shot her twice in the back, killing her in front of her two-year-old daughter. After seeing that Mallas was shot, Wicks fled on foot. The defendant chased after Wicks and caught up to him when Wicks tripped and fell in a nearby field. The defendant then shot Wicks in the chest. Wicks rolled onto his stomach, and the defendant shot him again in the back. After the defendant fled the scene, Wicks managed to return to his apartment and tell a neighbor to call the police. Wicks was seriously injured, but he survived.

We first address the defendant's contention that the trial court erred in restricting defendant's expert from testifying as to defendant's state of mind at the time of the offense.

Dr. Lawrence Egel, a psychologist, conducted a number of psychological tests on the defendant prior to trial. The defense proposed to have Dr. Egel testify at trial that, in his opinion, the defendant had a "dependent personality pattern" and at the time of the crime was "acting under a sudden and intense passion resulting from serious provocation."

The State filed a motion *in limine* to exclude the testimony of Dr. Egel. The trial court allowed Dr. Egel to testify as to the tests he conducted on the defendant, the results of those tests, and his opinions concerning the defendant's personality. He was not allowed, however, to testify as to the defendant's state of mind at the time of the offense or to state his opinion that the defendant was acting under sudden and intense passion as a result of serious provocation. The trial court held that such testimony was an opinion as to an ultimate issue of fact in the case which was not beyond the common understanding of the jury.

■ The question of the defendant's mental condition at the time of the crime is a question of fact to be determined by the trier of fact. (*People v. Ford* (1968), 39 Ill. 2d 318, 235 N.E.2d 576.) Expert opinion may not be admitted on matters of common knowledge unless the

subject is difficult to comprehend and explain. (*People v. Johnson* (1981), 97 Ill. App. 3d 1055, 423 N.E.2d 1206.) We find that a jury is capable of determining whether the defendant was acting under a sudden and intense passion as a result of serious provocation.

In *People v. Ambro* (1987), 153 Ill. App. 3d 1, 505 N.E.2d 381, the defendant and his wife had an argument during which the wife called the defendant an alcoholic and told him that she was involved with another man. The defendant then killed his wife by stabbing her in the heart with a kitchen knife. At trial, the defense attempted to have a psychiatrist testify as to defendant's mental state at the time he killed his wife. The trial court refused to allow the defendant's expert to testify that the defendant was acting under a sudden and intense passion at the time he killed his wife. The appellate court agreed, finding that "the jury could have arrived at its decision based on its knowledge without the help of expert testimony." (*People v. Ambro* (1987), 153 Ill. App. 3d 1, 8, 505 N.E.2d 381, 386.) Although the appellate court agreed that the expert testimony was properly excluded, it reversed the defendant's murder conviction and remanded the cause for a new trial, finding that a verbal communication of adultery is sufficient provocation for voluntary manslaughter, and that the jury should have been given an instruction on that offense. The supreme court overruled that finding in *People v. Chevalier* (1989), 131 Ill. 2d 66, 544 N.E.2d 942, holding that a verbal communication of adultery falls within the rule that mere words are insufficient provocation for voluntary manslaughter. However, that portion of the *Ambro* opinion dealing with the admissibility of expert testimony was not disturbed by *Chevalier*.

In *People v. Aliwoli* (1976), 42 Ill. App. 3d 1014, 356 N.E.2d 891, the trial court excluded psychiatric testimony regarding the issue of whether defendant had the requisite criminal intent to commit attempted murder. The appellate court affirmed, holding that the question of whether the defendant had the specific intent to kill was a question of fact for the jury, and that "the testimony of the psychiatrist would not only usurp the province of the jury, but it would probably not have persuaded them in resolving such issue of fact." *Aliwoli*, 42 Ill. App. 3d at 1021, 356 N.E.2d at 897.

The defendant relies on a line of cases which has held that expert testimony is admissible in order to assist the trier of fact even though the testimony is an opinion on an ultimate issue in the case. (*People v. Free* (1983), 94 Ill. 2d 378, 447 N.E.2d 218; *People v. Goolsby* (1977), 45 Ill. App. 3d 441, 359 N.E.2d 871; *People v. Carbona* (1975), 27 Ill. App. 3d 988, 327 N.E.2d 546.) This same argument was made and re-

jected in *Ambro*, where the court stated: "That proposition is correct in cases where the expert testifies to facts requiring scientific knowledge not within the common knowledge of the jury." *Ambro*, 153 Ill. App. 3d at 8, 505 N.E.2d at 386.

The defendant also argues that the trial court erred in allowing the State's expert to testify in rebuttal to Dr. Egel's testimony. The defendant contends that the testimony of the State's expert, Dr. Ali, was not proper rebuttal testimony because Ali agreed with defendant's expert that the defendant was not suffering from a personality disorder. Rebuttal evidence is that which is produced by the prosecution to explain, repel, contradict, or disprove evidence presented by the accused. (*People v. Rios* (1986), 145 Ill. App. 3d 571, 495 N.E.2d 1103.) The decision whether to admit rebuttal testimony is within the sound discretion of the trial court, and its decision will not be reversed absent a showing of abuse of discretion. *People v. Buckner* (1984), 121 Ill. App. 3d 391, 459 N.E.2d 1102.

■ Defendant's expert, Dr. Egel, testified that the defendant did not have a personality disorder. He also testified that the defendant did have a "dependent personality pattern" and that, under the circumstances, the commission of the crime in this case was a normal reaction for a person with that type of personality.

The prosecution called Dr. Ali, a psychiatrist, to testify in rebuttal. Dr. Ali interviewed the defendant on two occasions before trial and reviewed the results of the tests administered by Dr. Egel. Dr. Ali agreed with Dr. Egel that the defendant did not have a personality disorder. However, Dr. Ali stated that he was unable to form an opinion as to whether the defendant had a "dependent personality pattern" because that term did not exist in psychiatry. He further testified that Dr. Egel's opinion was not credible because it was not based on the Diagnostic and Statistical Manual of Mental Disorders, which Dr. Ali characterized as the definitive manual for diagnosing mental disorders. This testimony clearly contradicts or disproves the testimony of Dr. Egel and was properly admitted as rebuttal evidence.

The defendant next argues that the trial court erred in refusing to give the jury an instruction on second degree murder. The defense contends that the relationship between the defendant and the murder victim, when coupled with the defendant's "dependent personality" and the confrontation that took place on the day of the offense, were sufficient to incite a sudden and intense passion caused by serious provocation as required for mitigation of a homicide from first to second degree murder under section 9—2 of the Criminal Code of 1961

(Ill. Rev. Stat. 1989, ch. 38, par. 9—2). Section 9—2 provides in relevant part:

> "(a) A person commits the offense of second degree murder when he commits the offense of first degree murder *** and either of the following mitigating factors are present:
>
> (1) At the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by the individual killed ***[.]
>
> ***
>
> (b) Serious provocation is conduct sufficient to excite an intense passion in a reasonable person." (Ill. Rev. Stat. 1989, ch. 38, par. 9—2.)

The offense of second degree murder replaced the offense of voluntary manslaughter in Illinois in 1987 (Pub. Act 84—1450 §2, eff. July 1, 1987). "However, with the major exception of placing the burden on the defendant to prove the factor in mitigation, the offense of voluntary manslaughter under the old statute, and second degree murder under the new statute, are substantially the same." *People v. Timberson* (1989), 188 Ill. App. 3d 172, 177, 544 N.E.2d 64, 66.

In Illinois, only four categories of provocation have been recognized as sufficiently serious to reduce the crime of first degree murder to second degree murder. They are: (1) substantial physical injury or assault; (2) mutual quarrel or combat; (3) illegal arrest; and (4) adultery with the offender's spouse. (*People v. Fausz* (1983), 95 Ill. 2d 535, 449 N.E.2d 78; *People v. Crews* (1967), 38 Ill. 2d 331, 231 N.E.2d 451.) The defendant has the burden of establishing some evidence of serious provocation, or the trial court may properly deny a second degree murder instruction.

The facts of this case do not fall under any of the four categories of serious provocation recognized in Illinois. The first three categories clearly do not apply. Under the fourth category, there is obviously no evidence of adultery with the offender's spouse since the defendant and the victim were not married.

The defendant argues that this last category should be expanded to include the "special relationship" between the defendant and the victim. The facts in this case closely parallel those in the recent supreme court case of *People v. McCarthy* (1989), 132 Ill. 2d 331, 547 N.E.2d 459. *McCarthy* was well summarized in *People v. Hernandez* (1990), 204 Ill. App. 3d 732, 562 N.E.2d 219:

> "In *McCarthy*, the victim, Adrianne Neal, and the defendant had dated since they began high school in 1974. They never married, but they had one daughter in 1978 and another in

1981. In April 1983, Adrianne and the children moved out of the apartment they shared with the defendant. On June 7, 1983, the defendant forcibly entered Adrianne's apartment and found her and another man dressed in their underwear in bed, and he shot both of them. The man escaped, but Adrianne died as a result of five close-range shots.

On appeal from his conviction of murder and his 34-year sentence, the [appellate] court agreed with the defendant that the trial judge had erred in refusing defense counsel's tendered instructions on the offense of voluntary manslaughter. The court believed that such a verdict should be an available option even in the absence of a marital relationship and that the evidence in the case warranted the use of such an instruction. Accordingly, it reversed and remanded the cause for a new trial.

The supreme court reversed the *McCarthy* decision. In reversing, the supreme court did not decide whether the category of serious provocation already recognized in instances of spousal adultery should be enlarged to include unmarried persons who share a marital-type relationship. Rather, it focused on the fact that the relationship had broken off two months before the homicide occurred. In declining to fashion a rule that would permit use of the voluntary manslaughter instruction when the relationship in question has effectively ended, the court adhered to previous cases, which stated that the provocation of adultery will not warrant use of the voluntary manslaughter instruction when the spouses are already divorced. (*People v. McCarthy* (1989), 132 Ill. 2d 331, 341-42[, 547 N.E.2d 459].) Further, the court found no evidence apart from the defendant's own testimony that his actions were engendered by the 'sudden and intense passion' required by statute. (Ill. Rev. Stat. 1983, ch. 38, par. 9—2(a)(1).) Rather the court felt the defendant's actions suggested he 'was stalking the victim and intended to kill her.' " *Hernandez*, 204 Ill. App. 3d at 741-42, citing *McCarthy*, 132 Ill. 2d at 342, 547 N.E.2d at 463.

Similarly here, although Mallas and the defendant had previously enjoyed an intimate relationship, that relationship had ended two months before the homicide occurred. Additionally, there is no evidence in this case to suggest that the defendant was acting under a "sudden and intense passion." In fact, as in *McCarthy*, the evidence here suggests that the defendant literally stalked the murder victim. The defendant carried a loaded gun and followed Mallas in a rented car. This conduct suggests that he was not suddenly provoked when

he shot Mallas, but rather that he was completing a contemplated plan. The trial court's decision not to instruct the jury on second degree murder was proper.

■ Finally, defendant contends that the sentences imposed are excessive and should be reduced. Defendant was sentenced to 40 years' imprisonment for first degree murder and a concurrent term of 20 years' imprisonment for attempted first degree murder. Defendant contends that the trial court failed to consider several mitigating factors, including his age, exemplary work record, and lack of prior criminal history.

The trial court is charged with the task of fashioning a sentence which strikes the appropriate balance between the protection of society and the rehabilitation of the defendant (*People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541), and that determination will not be disturbed absent an abuse of discretion (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882). The court is not obliged to recite and assign value to each factor presented at a sentencing hearing. (*People v. Plantinga* (1985), 132 Ill. App. 3d 512, 477 N.E.2d 1299; *People v. Baker* (1983), 114 Ill. App. 3d 803, 448 N.E.2d 631.) It is presumed that the court considered any mitigating evidence absent some indication, other than the sentence itself, to the contrary. (*People v. Sawyer* (1985), 139 Ill. App. 3d 383, 487 N.E.2d 662, *aff'd* (1986), 115 Ill. 2d 184, 503 N.E.2d 331.) It is clear from the trial judge's comments that he weighed and considered both the mitigating and aggravating factors. We will not substitute our judgment for that of the trial court. *Cox*, 82 Ill. 2d at 280, 412 N.E.2d at 547.

For the reasons stated above, we affirm the judgment and sentence of the circuit court.

Affirmed.

GORMAN and HAASE, JJ., concur.